_____

No. 95-2311
_____

United States of America,           *
                                     *
        Plaintiff - Appellee,        *   Appeal from the United States
                                     *   District Court for the
    v.                               *   District of Minnesota.
                                     *
John Corcoran Wicker,                *
                                     *
        Defendant - Appellant.       *


_____

Submitted:  November 14, 1995

Filed:  April 3, 1996
_____

Before HANSEN, JOHN R. GIBSON, and MURPHY, Circuit Judges.
_____


HANSEN, Circuit Judge.

    John Corcoran Wicker appeals the district court's[1] denial of his motion to withdraw a guilty plea to conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1341.  We affirm.

I.

    Wicker was charged in a 23-count superseding indictment with one count of conspiracy to commit mail fraud under 18 U.S.C. § 371 and twenty-two counts of mail fraud under 18 U.S.C. § 1341.  At his plea hearing, pursuant to a written plea agreement, he entered a

_____

    [1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

guilty plea to count one of the indictment, which charged him with violating §§ 371 and 1341 through a scheme to defraud and obtain money and property from homeowners by means of false and fraudulent pretenses and using the United States mails in furtherance of that scheme.[2]   At his plea hearing, Wicker stated he understood the nature of the charges against him, that he was volitionally entering his plea, and that his trial counsel had represented him well.  Wicker specifically testified to the following facts.

In 1984, Wicker formed the company called Neltom, Inc. (later renamed Shorwac), for which he performed the bulk of the day-to-day business.  He brought Patricia Shivers[3] into the operation in 1985 and employed a number of people at different times.  In this business, Wicker would locate homeowners who had substantial equity in their homes, but who were behind in their mortgage payments and in danger of having their homes foreclosed by the bank.  Through a series of misrepresentations, Wicker would convince the homeowners to convey their homes to him in the hope of recovering the property from him later.

The misrepresentations included both false statements and omissions of material facts that would have affected the homeowners' decisions regarding their property.  For example, Wicker failed to tell the homeowners that he planned to put additional mortgages on the properties, many of which mortgages exceeded the amounts necessary to redeem the properties.  He also

---

[2]Wicker asserts that count one of his superseding indictment does not charge him with violating 18 U.S.C. § 371.  He is incorrect.  Count one of the superseding indictment includes a charge under 18 U.S.C. § 371 at pages 1 and 43.  The plea transcript clearly shows him pleading to a conspiracy charge. (Plea Tr. at 5, 6, 13, 20-21.)

[3]Shivers entered a guilty plea to an information charging her with conspiracy to defraud the United States (Internal Revenue Service) under 18 U.S.C. § 371, one day before Wicker pleaded guilty to count one of the superseding indictment.

failed to tell the homeowners that he planned to use "straw parties" to encumber the titles of the properties. Once Wicker acquired title, he would in some cases charge the homeowners rent and use the rent money for purposes other than paying the obligations on the property, leaving homeowners who wanted to recover their property ultimately liable for those amounts. In other cases, Wicker told homeowners that he would create contracts for deed on the properties; he failed to tell those homeowners he would sell the contracts for deed, reaping a profit for himself, Shivers, or other investors to whom Wicker owed money. This artifice of enticing people to give him title to their homes through material misrepresentations was driven, in large part, by Wicker's desire to wring additional funds out of the homeowners' properties. Wicker's signed plea agreement also contained a similar recitation of the underlying incriminating facts.

After the plea hearing, a presentence investigation ensued and a report was compiled. Wicker's counsel filed objections to the report, and a sentencing hearing was scheduled. Shortly before the scheduled hearing, Wicker obtained new counsel and filed a motion to withdraw his guilty plea, asserting, among other things, that the evidence presented at his plea hearing was insufficient to establish an adequate factual basis for his plea. The court held an evidentiary hearing, found the factual foundation for the plea to be adequate, and denied the motion.

Wicker subsequently filed a motion to reconsider, this time contending that Wicker's former counsel had labored under an actual conflict of interest, which rendered counsel ineffective. As evidence of a conflict, Wicker submitted copies of memoranda that his former counsel had written to the file upon becoming concerned that Wicker was contemplating a malpractice suit against counsel. The district court held another evidentiary hearing. After receiving testimony from both Wicker and his former counsel, the court determined that the former counsel had not labored under a

conflict of interest and had competently represented Wicker.  The court denied the motion to reconsider and sentenced Wicker in accordance with his guilty plea and his plea agreement.  Wicker appeals the denial of his motion to withdraw his guilty plea.

## II.

A court may grant a motion to withdraw a guilty plea if a defendant files such a motion before sentencing and establishes a fair and just reason for withdrawing the plea.  Fed. R. Crim. P. 32(e).[4]  The defendant bears the burden of establishing a fair and just reason.  United States v. Yell, 18 F.3d 581, 582 (8th Cir. 1994).  "[T]he `fair and just' standard is a liberal standard, [but] it does not create an automatic right to withdraw a plea."  United States v. Kelly, 18 F.3d 612, 618 (8th Cir. 1994).  Besides considering whether the defendant has established a fair and just reason, a district court must also consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion."  United States v. Nichols, 986 F.2d 1199, 1201 (8th Cir. 1993).  However, "[i]f the defendant fails to establish a fair and just reason for withdrawing the guilty plea, the trial court need not address the remaining considerations."  Id.

We review the district court's decision to deny a motion for withdrawal for an abuse of discretion.  Yell, 18 F.3d at 582.  Wicker contends that the district court abused its discretion by failing to find a "fair and just reason."  Specifically, Wicker argues that the transcript does not contain an adequate factual

_____

[4]Subdivision (e) under the 1994 amendment to the Federal Rules of Criminal Procedure was formerly subdivision (d).  The new provision is essentially the same, except for minor stylistic changes.  Fed. R. Crim. P. 32 (commentary to the 1994 amend., subd. (e)).

4

basis supporting Wicker's guilty plea and that Wicker's trial counsel labored under a conflict of interest that led counsel to inadequately advise Wicker.  We address these arguments in turn.[5]

### A.  Factual Plea Foundation

Under Rule 11(f) of the Federal Rules of Criminal Procedure, a court must make an inquiry sufficient to satisfy itself that a factual basis exists for the guilty plea.  "A factual basis exists, even if the defendant protests his innocence, if sufficient evidence is presented at the time of the plea for the court to reasonably determine that the defendant committed the offense."   Roberson v. United States, 901 F.2d 1475, 1477 n.3 (8th Cir. 1990). Wicker contends the record does not contain an adequate factual foundation to support either mail fraud or conspiracy.  We disagree.

To commit mail fraud, one must "devise[] or intend[] to devise any scheme . . . to defraud, or to obtain money or property by means of false or fraudulent pretenses" and use the United States mails in furtherance of that scheme.  18 U.S.C. § 1341 (1994).  Wicker first argues that the factual basis for mail fraud is inadequate as to his intent to defraud because the evidence does

---

[5]After Wicker's counsel had filed a brief with this court, Wicker moved to file a pro se supplemental brief with numerous evidentiary exhibits, some of which we believe were stricken from the record below by the district court in its order of May 30, 1995.  As a matter of Eighth Circuit policy, we ordinarily do not accept pro se briefs from a party who is represented by counsel. United States v. Blum, 65 F.3d 1436, 1443 n.2 (8th Cir. 1995), cert. denied, 1995 WL 761577 (U.S. Jan. 22, 1996); United States v. Marx, 991 F.2d 1369, 1375 (8th Cir.), cert. denied, 114 S. Ct. 618 (1993).  Even though Wicker's retained counsel has rendered able representation in this case, we have gratuitously examined the tendered pro se filings.  We find they set forth no material of arguable merit not already covered by retained counsel's argument and brief.  The pro se motion to formally file the same is denied.  The clerk shall retain the pro se brief as tendered so a record is made of what we have in fact reviewed.

not establish that he knew his activities were illegal. Wicker misunderstands the intent required for mail fraud. "The critical inquiry is not whether [Wicker] intended to break the law, but, rather, whether [he] intended to defraud the [homeowners]." United States v. Costanzo, 4 F.3d 658, 664 (8th Cir. 1993). "A scheme to defraud is generally one which is reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Behr, 33 F.3d 1033, 1035 (8th Cir. 1994). To that end, Wicker admitted at his plea hearing that he used misrepresentations of material facts to cause the homeowners to turn their properties over to him. He further conceded that his misrepresentations were driven in large part by his desire to draw funds out of the homeowners' properties. This testimony provides abundant evidence from which the district court could conclude that Wicker intended to defraud the homeowners and that he executed a scheme to obtain property by means of false or fraudulent pretenses.

Wicker's second challenge to the factual foundation to his plea is that the testimony at his plea hearing failed to establish that Wicker used the United States mail in furtherance of executing his scheme. The record, however, indicates otherwise. When the district court asked at the plea hearing whether Wicker had used the United States mails in carrying out his scheme, Wicker nodded his head and answered, "We used the United States mails, Your Honor." (Plea Tr. at 23.)

Wicker's challenge to the factual basis for his plea to conspiracy to commit mail fraud under 18 U.S.C. § 371 also fails. Wicker asserts his plea was inadequate because the thrust of the government's and the district court's questions focused only on Wicker's intent to defraud homeowners, not his specific intent to defraud the United States. Wicker's argument misapprehends the indictment. Section 371 prohibits two types of conspiracy: conspiring "to commit any offense against the United States" and conspiring "to defraud the United States." 18 U.S.C. § 371 (1994).

6

Wicker's indictment charges him not with conspiring to defraud the United States, but with conspiring to commit an offense against the United States, namely mail fraud.  Under the conspiracy charge in this case, the intent the government must establish at a minimum is the necessary intent for the substantive crime, here mail fraud, which, as explained above, was amply demonstrated.  See United States v. Feola, 420 U.S. 671, 687 (1975) ("[I]n order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself.");  United States v. Fairchild, 526 F.2d 8, 11 (8th Cir. 1975) ("[W]here a substantive offense embodies only a requirement of mens rea as to each of its elements, the general federal conspiracy statute requires no more.") (quoting Feola, 420 U.S. at 694); United States v. Friedman, 506 F.2d 511, 516 (8th Cir. 1974), cert. denied, 421 U.S. 1004 (1975) ("The required intent [for conspiracy] is no less nor no more than that necessary to commit the substantive crime.").  Given the admissions made by Wicker at the plea proceeding concerning his involvements with Ms. Shivers and others, the factual foundation establishing a § 371 conspiracy violation was more than adequate.

We believe the evidence at the plea hearing was sufficient for the district court to reasonably determine that the defendant violated both 18 U.S.C. § 1341 and 18 U.S.C. § 371.  The district court therefore did not abuse its discretion in denying Wicker's later motion to withdraw his guilty plea on the basis of an inadequate foundation under Federal Rule of Criminal Procedure 11.

B.  Conflict of Interest

Wicker's second attack on the district court's determination that Wicker did not establish a "fair and just reason" under Federal Rule Criminal Procedure 32(b) to withdraw his guilty plea involves his trial counsel's alleged conflict of interest.  Wicker

points to memoranda his attorney wrote to the file as evidence of a conflict. Wicker asserts the memoranda reveal a fear of malpractice, which divided his attorney's loyalty between Wicker on one hand and the attorney and the attorney's law firm on the other. Wicker argues that, because of this alleged actual conflict of interest, he was presumably prejudiced and his counsel was ineffective. See Strickland v. Washington, 466 U.S. 688, 692 (1984). The government responds that no conflict existed, contending that the memoranda do not reveal a divided loyalty, but rather a conscientious attorney who was concerned that Wicker was not being completely forthright.

The district court conducted an evidentiary hearing on this issue, during which the court heard conflicting testimony from Wicker and his former attorney about the extent of the attorney's trial preparation efforts and any alleged conflict. After reviewing the testimony, along with other submitted evidence, the district court found that Wicker had failed to prove that his counsel had actively represented conflicting interests, that counsel had taken any action unfavorable to Wicker's interests, or that Wicker was prejudiced by the alleged conflict of interest. The court concluded that Wicker had entered his plea knowingly and voluntarily and had established no fair and just reason for withdrawing his plea. When Wicker later attempted to revisit this issue at his sentencing hearing, the court further explained that Wicker's testimony had simply lacked credibility.

We review a district court's determination on issues concerning conflicts of interest for an abuse of discretion. United States v. Haren, 952 F.2d 190, 195 (8th Cir. 1992). Credibility determinations are peculiarly within "the province of the trial court" and "virtually unreviewable on appeal." United States v. Heath, 58 F.3d 1271, 1275 (8th Cir.), cert. denied, 116 S. Ct. 240 (1995).

We have no difficulty in affirming the district court on this issue. We are unpersuaded by Wicker's theory that an attorney's act of drafting memoranda to the file, born out of a concern for the integrity of his practice, in and of itself creates an actual conflict of interest. Furthermore, Wicker has cited, and we have found, no precedent supporting this creative argument. Moreover, given the district court's negative assessment of Wicker's credibility and the former counsel's contrasting testimony, we find no abuse of discretion in the court's determination that no conflict of interest existed. It follows, then, that the court did not abuse its discretion in denying Wicker's motion to withdraw based on the alleged conflict.

## III.

Finding no abuse of discretion in the district court's denial of Wicker's motion to withdraw his guilty plea, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9