# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-1023

_____

United States of America,            *

                            *

        Appellee,        *

                            *   Appeal from the United States

    v.                *   District Court for the

                            *   Western District of Missouri

Cesar F. Morales,           *

                            *

        Appellant.      *

_____

Submitted: March 11, 1997

Filed: July 15, 1997

_____

Before McMILLIAN and HANSEN, Circuit Judges, and MAGNUSON,[*] District Judge.

_____

McMILLIAN, Circuit Judge.

    Cesar F. Morales appeals from a final order entered in the District Court[1] for the Western District of Missouri denying his motion to withdraw a plea of guilty for

_____

[*]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.  For reversal, Morales argues that the district court abused its discretion in denying his motion to withdraw his plea of guilty without a hearing on the motion.  For the reasons discussed below, we affirm the judgment of the district court.

## I.  BACKGROUND

In October 1993, a confidential informant introduced an undercover police officer to a drug dealer named Octavio Pichardo.  On November 28, 1993, the undercover officer negotiated with Pichardo to buy five kilograms of cocaine.  The sale was to occur the next day near Kemper Arena in Kansas City, Missouri.  On November  29, 1993, Manuel Moreno-Perez telephonically paged the undercover officer to change the time of the arranged meeting, but later contacted the officer to reschedule the meeting for the original time.  Later that same day, Pichardo telephonically paged the undercover officer to confirm the original time of the meeting and to inform him that he would arrive in a black Bronco truck.

Undercover officers arrived at the meeting place as scheduled.  Shortly thereafter, Pichardo and Moreno-Perez arrived in a black Bronco.  Pichardo and Moreno-Perez then left and returned, followed by a Mercury driven by Morales.  Pichardo, Moreno-Perez, and Morales did not have the cocaine with them, but they agreed to deliver three of the five kilograms of cocaine for a price of $28,000 per kilogram to a local restaurant later that day.  The remaining two kilograms were to be delivered later at the same price.  At about 5:30 p.m. Pichardo telephoned the undercover officer to confirm that they had the three kilograms of cocaine available and the other two kilograms would be available the next day.

The undercover officers arrived at the restaurant and met Pichardo and Moreno-Perez inside.  Pichardo and Moreno-Perez told the officers that two other people would deliver the cocaine.  Shortly thereafter, Victor Herrera-Sandoval and Dario Garcia-

Hernandez arrived in the restaurant parking lot in a black Toyota Paseo. As they got out of the Paseo, they opened the trunk by remote control. Moreno-Perez reached into the trunk and took out three kilograms of cocaine and handed it to the undercover officer. The officers then arrested Moreno-Perez, Pichardo, Herrera-Sandoval, and Garcia-Hernandez. At about the same time, the officers stopped a "counter-surveillance" vehicle in which Feliciano Ayala-Gil was the driver and Maria Espana-Flores was a passenger. The police found loaded firearms in the "counter-surveillance" vehicle. Pichardo, Ayala-Gil, Espana-Flores, Garcia-Hernandez, and Herrera-Sandoval were determined to be illegal aliens. Moreno-Perez and Morales were determined to be legal resident aliens.

Herrera-Sandoval and Garcia-Hernandez identified Morales as the supplier of the cocaine. Morales was arrested on December 13, 1993. Morales and the others were charged in a federal indictment with various drug related offenses; Morales was charged only with conspiracy to possess with intent to distribute cocaine, to which he initially entered a plea of not guilty. Morales has no criminal record and does not speak English. Morales denied that he was the supplier of the cocaine. After the government informed Morales that Herrera-Sandoval and Garcia-Hernandez had agreed to identify Morales at trial as their supplier of cocaine, Morales decided to change his plea to guilty.

At his change of plea hearing, Morales admitted that Moreno-Perez had contacted him for the purpose of setting up the cocaine sale, and that he had agreed to supply the cocaine to Moreno-Perez. Morales also admitted that he had met with the undercover officers near Kemper Arena to negotiate the terms of the drug transaction. The district court found that Morales's guilty plea had been voluntarily made, there was a factual basis for the plea, and Morales understood the consequences of the plea.

After his entering his guilty plea, Morales was interviewed by a probation officer in the preparation of a pre-sentencing report. During the interview Morales denied that

he was the source of the cocaine and stated that his real intent was to rob the undercover officers of the "buy money." This information directly affected the "acceptance of responsibility" factor of the sentencing guidelines. A sentencing hearing was scheduled to gather testimony regarding his "acceptance of responsibility" and other factors affecting the sentencing guidelines.

At the sentencing hearing on May 18, 1995, the government disclosed that Garcia-Hernandez, one of the two witnesses who had identified Morales as the supplier of the cocaine, had been deported to Mexico and was thus not available as a witness. Herrera-Sandoval, the other witness who identified Morales as the supplier, did testify for the government. However, the district court found that Herrera-Sandoval was not a credible witness. The district court stated that Herrera-Sandoval's testimony that Morales was the source of the cocaine was not believable. United States v. Morales, No. 4:93CR00171-1 (W.D.Mo. Dec. 18, 1995) (judgment) (statement of reasons). Thereafter, Morales sought to withdraw his guilty plea on the basis that he "mistakenly" pleaded guilty because of his understanding that Herrera-Sandoval would incriminate him, but Herrera-Sandoval was found to be not credible.

The district court denied Morales's motion to withdraw his guilty plea. United States v. Morales, No. 93-00171-01-CR-W-6 (W.D. Mo. Oct. 20, 1995) (district court order denying motion to withdraw plea on reconsideration). The district court interpreted Morales's argument to be that he could not be guilty of the crime of conspiracy to possess with intent to distribute because he did not have the requisite intent to distribute cocaine, but rather, had the intent to steal the "buy money" from the undercover officers. The district court reasoned that conspiracy does not require that the defendant personally intend to commit the substantive offense. Id. at 2. Subsequently, the district court sentenced Morales to five years imprisonment, four years supervised release, and a special assessment of fifty dollars. United States v. Morales, No. 4:93CR00171-1 (W.D. Mo. Dec. 18, 1995) (judgment). This appeal followed.

-4-

## II. Discussion

Morales argues that the district court abused its discretion in denying his motion to withdraw his guilty plea. Morales argues that he pleaded guilty to conspiracy to possess with the intent to distribute cocaine because he "mistakenly" understood that Herrera-Sandoval would incriminate him. Reply Brief of Appellant at 4. Thus, Morales argues that he decided to plead guilty because of a "mistake," and such a "mistake" is a sufficient basis for a withdrawal of a plea. Morales also argues that he did not have the requisite intent to commit the substantive offense of distribution of cocaine and therefore cannot be guilty of conspiracy.

We review the district court's denial of a motion to withdraw a plea for an abuse of discretion. United States v. Newson, 46 F.3d 730, 732 (8th Cir. 1995). "'[A] defendant has no absolute right to withdraw a guilty plea before sentencing,' and the decision to allow or deny the motion remains within the sound discretion of the trial court." United States v. Prior, 107 F.3d 654, 657 (8th Cir. 1997) (citing United States v. Boone, 869 F.2d 1089, 1091 (8th Cir.), cert. denied, 493 U.S. 822 (1989)), petition for cert. filed, No. 96-8478 (U.S. Apr. 3, 1997). "[A] defendant may not withdraw his plea [before he is sentenced] unless he shows a 'fair and just reason' under Rule 32(e) [of the Federal Rules of Criminal Procedure]." United States v. Hyde, 117 S. Ct. 1630, 1631 (1997). The defendant has the burden of proving such a justification. United States v. Prior, 107 F.3d at 657. In determining whether to set aside a plea of guilty, factors to consider are: (1) whether the defendant has demonstrated a fair and just reason; (2) whether the defendant has asserted his innocence; (3) the length of time between the guilty plea and the motion to withdraw; and (4) whether the government will be prejudiced. Id.

Morales relies on United States v. Nichols, 986 F.2d 1199 (8th Cir. 1993), for the proposition that "mistake" is a proper basis for allowing a defendant to withdraw a guilty plea. In that case, this court merely stated that "several cases allude to 'mistake'

as a basis for allowing a defendant to withdraw a guilty plea."  Id. at 1203 (citations omitted).  However, this court then clarified that, in those cases, "mistake" was the proper basis for the withdrawal of a plea because the defendant did not understand the nature of the offense charged. Id.  In the present case, Morales understood the nature of the offense charged; his "mistake" was that he miscalculated the strength of the government's case against him.  Such a "mistake" is not of the type that would be a "fair and just reason" for withdrawal of a guilty plea as required by Rule 32(e).[2]

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him . . . [and] judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. . . . A defendant is not entitled to withdraw his plea merely because he discovers . . . after the plea has been accepted that his calculus misapprehended the quality of the [government's] case . . . . [A]bsent misrepresentation or other impermissible conduct by [government] agents . . . a voluntary plea of guilty [is not subject to later attack]. . . .
>
> . . . [There is] no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the [government] would have had a weaker case than the defendant had thought . . . .

---

[2]In explaining the rationale for adding the "fair and just reason" standard to Rule 32(e), the Advisory Committee stated,

> [w]ere withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.  In fact, however, a guilty plea is no such trifle, but a "grave and solemn act," which is "accepted only with care and discernment."

Fed. R. Crim. P. 32(e) advisory committee's note (1983) (citations omitted).

Brady v. United States, 397 U.S. 742, 756-57 (1970). Morales does not allege that the government intentionally misrepresented any of the evidence against him, including the testimony of Herrera-Sandoval. Thus, Morales's "mistaken" understanding of Herrera-Sandoval's testimony is not a proper basis for withdrawal of his guilty plea.

Morales also argues that he lacked the required intent for the conspiracy charge because he intended to steal the "buy money" rather than to distribute cocaine. Morales argues that he did not understand the significance of the difference between the intent to steal and the intent to distribute cocaine when he pleaded guilty to the crime charged.

"To convict a defendant of conspiracy, the government must prove . . . there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." United States v. Berndt, 86 F.3d 803, 809 (8th Cir. 1996) (citations omitted). "The law in this Circuit is quite clear that an individual becomes a member of a conspiracy when the person knowingly contributes his or her efforts in furtherance of the objectives of the conspiracy." United States v. Bonadonna, 775 F.2d 949, 957 (8th Cir. 1985) (quoting United States v. Michaels, 726 F.2d 1307, 1311 (8th Cir.), cert. denied, 469 U.S. 820 (1984)). Morales admitted that he attended a meeting with his co-defendants and undercover officers posing as drug buyers on November 29, 1993, and thus was aware of the conspiracy with intent to distribute cocaine. Morales admitted that he knowingly participated in negotiations for the sale of kilogram amounts of cocaine to the undercover agents. Morales also admitted that he agreed to provide Moreno-Perez with the cocaine. Morales thus admitted to the essential elements of the crime of conspiracy with intent to distribute cocaine: he was aware of the conspiracy, agreed to provide a co-defendant with cocaine, and participated in negotiations for the sale of the cocaine, thereby acting in furtherance of the conspiracy and thus becoming a member of the conspiracy. Morales's alleged secret intention to steal the "buy money" is irrelevant to elements of the crime of conspiracy to which he knowingly and voluntarily

pleaded guilty.[3]  Therefore, we hold the district court did not abuse its discretion in denying Morales's motion to withdraw his guilty plea.

### III.  Conclusion

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]See United States v. Young, 954 F.2d 614, 619 (10th Cir. 1992) (distinguishing between a defendant's intent and motive for the crime of conspiracy and stating that "[d]efendant need not intend to personally [commit the substantive offense] so long as the conspiracy, which [he] has knowingly joined has the objective of [committing the substantive offense]"); cf. United States v. Smith, 26 F.3d 739, 744 (7th Cir.) ("Joining a distribution conspiracy does not require an agreement to distribute personally."), cert. denied, 513 U.S. 1064 (1994); United States v. Kragness, 830 F.2d 842, 860 (8th Cir. 1987) ("[T]raditional conspiracy law requires only that each defendant agree to join the conspiracy, not that he agree to commit each of the acts that would achieve the conspiracy's objective.").