# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-3461
_____

United States of America,

    Appellee,

v.

Mendoor Lamont Smith,

    Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

_____

No. 04-3747
_____

United States of America,

    Appellee,

v.

Darrian Deangelis Jordan,

    Appellant.

Appeals from the United States District Court for the Northern District of Iowa.

\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

Submitted: June 21, 2005
Filed: September 6, 2005

_____

Before MELLOY, HEANEY and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Mendoor Lamont Smith ("Smith") pled guilty to possession with intent to distribute 36.1 grams of marijuana within 1,000 feet of a protected location after having been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 851 and 860. Smith challenges the district court's[1] categorization of his prior conviction for the reckless use of a firearm, in violation of Iowa Code § 724.30, as a crime of violence. Darrian Deangelis Jordan ("Jordan") pled guilty to possession with intent to distribute 112.48 grams of cocaine base within 1,000 feet of a protected location after having been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 851 and 860. Jordan appeals the district court's denial of his motion to withdraw his plea of guilty. He also challenges the failure of the Government to move for and the district court to grant a one-level reduction for acceptance of responsibility under U.S. Sentencing Guidelines Manual § 3E1.1(b). Finally, Jordan argues that his Sixth Amendment rights were violated when the district court made findings of fact regarding his criminal history and that his sentence is unreasonable in light of *United States v. Booker*, 125 S.Ct. 738 (2005). We affirm.

I.    BACKGROUND

On November 13, 2003, a confidential informant reported that Smith and Jordan were selling narcotics in Waterloo, Iowa. Officers executing a search warrant at Smith and Jordan's house discovered marijuana, cocaine, cocaine base, a digital scale and $12,310 in cash. Jordan arrived home as the search of his house was about

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

to commence. A search of his person netted $410 in cash and two mobile phones. Smith arrived shortly thereafter. He was witnessed turning away from the house and discarding a baggie, which was later discovered to contain marijuana, under a car. Law enforcement officers called Smith's name, and he returned to the house. A search of his person netted $260 in cash and additional marijuana.

After arraignment, trial deadlines were established pursuant to the district court's Trial Scheduling and Management Order ("standing scheduling order"). The standing scheduling order required that pretrial motions be filed by March 1, 2004. If either defendant wished to qualify for a full three-level reduction for acceptance of responsibility under § 3E1.1, the standing scheduling order required notification by March 8, 2004 of intention to plead guilty ("notification deadline"). A guilty plea would then have to be entered by March 15, 2004.

Smith and Jordan filed motions to suppress evidence on March 1, 2004, the deadline for filing pretrial motions. A hearing on the motions to suppress evidence was set for March 16, 2004. On the date notification of intention to plead guilty was due, March 8, 2004, Smith and Jordan each filed motions seeking a continuance of the notification deadline. Both argued that a continuance was appropriate because the motions to suppress were still pending. The next day, March 9, 2004, the district court denied the motions to continue, but informed the defendants that they had "the option of entering a conditional plea in order to continue to pursue [their] motion[s] to suppress." *United States v. Jordan, et al.*, No. 04-2003 (N.D. Iowa Mar. 9, 2004). Jordan immediately asked the district court to reconsider, which it did on March 11, 2004, when again it denied the motion to continue the notification deadline.

A magistrate judge heard the motion to suppress evidence on March 16, 2004. That same day, the magistrate judge entered a report and recommendation to deny the motions to suppress evidence.

While the magistrate judge's report and recommendation was pending before the district court, Smith filed a Notice Regarding Entry of a Plea of Guilty and Consent to Proceed Before a Magistrate Judge. He then pled guilty to possession with intent to distribute 36.1 grams of marijuana within 1,000 feet of a protected location after having been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 851 and 860. At sentencing, the district court found that Smith qualified as a career offender under U.S.S.G. § 4B1.1 because he had at least two prior felony convictions for a controlled substance offense or a crime of violence. These included a prior conviction for the crime of violence of reckless use of a firearm and two prior convictions for controlled substance offenses. After the district court granted Smith a three-level reduction for acceptance of responsibility, he faced a total offense level of 29 and a criminal history category of VI. Based on a guidelines range of 151 to 188 months, the district court sentenced Smith to 151 months' imprisonment. Anticipating that the guidelines might be held unconstitutional, the district court also imposed an alternative sentence of 151 months' imprisonment based on its discretion after considering the factors set forth in 18 U.S.C. § 3553(a).

On March 29, 2004, the district court accepted without objection the magistrate judge's report and recommendation to deny the motions to suppress. Two days later, Jordan filed his own Notice Regarding Entry of a Plea of Guilty and Consent to Proceed Before a Magistrate Judge. Jordan then pled guilty to possession with intent to distribute 112.48 grams of cocaine base within 1,000 feet of a protected location after having been convicted of a felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 851 and 860. The district court accepted the plea of guilty on April 22, 2004. However, on July 12, 2004, Jordan filed a motion to withdraw his plea of guilty. This motion was denied on July 18, 2004, and Jordan was sentenced on October 29, 2004.

At sentencing, the district court found that Jordan also qualified as a career offender under U.S.S.G. § 4B1.1 and calculated an offense level of 37. The district court then granted a two-level reduction for acceptance of responsibility. The Government did not move for the additional level of reduction for acceptance of responsibility, and Jordan did not object to the Government's failure to do so. With a total offense level of 37 and a criminal history category of VI, the district court imposed a sentence of 292 months based on a sentencing range of 292 to 365 months. The district court then imposed an alternative sentence of 292 months based on its discretion after considering the factors set forth in § 3553(a).

Smith appeals his sentence, challenging his categorization as a career offender under § 4B1.1. He argues that the reckless use of a firearm, in violation of Iowa Code § 724.30, is not a crime of violence as defined by U.S.S.G. § 4B1.2 and that his second controlled substance conviction is not sufficiently separated in time from his first controlled substance conviction to qualify as a distinct offense. Smith also argues that the district court violated the Sixth Amendment when it categorized reckless use of a firearm as a crime of violence.

Jordan appeals the district court's denial of his motion to withdraw his plea of guilty, arguing that his desire to preserve his right to appeal the adverse ruling on his suppression motion is a fair and just reason for withdrawing his guilty plea and that his plea of guilty was coerced or otherwise rendered involuntary by the district court's standing scheduling order. He also appeals his sentence, challenging the failure of the Government to move for and the district court to grant the § 3E1.1(b) additional level of reduction for acceptance of responsibility. Further, Jordan argues that a jury must find beyond a reasonable doubt that he had committed the predicate offenses that resulted in his classification as a career offender and that his sentence is unreasonable because he did not obtain the § 3E1.1(b) reduction, the district court applied the guidelines in a mandatory fashion and the district court failed to state its reasons for imposing an alternative discretionary sentence.

## II.    DISCUSSION

### A.    Mendoor Lamont Smith

Smith first challenges the district court's finding that he qualifies as a career offender under U.S.S.G. § 4B1.1.  "A defendant is a career offender if . . . the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense [and] the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a) (2003).  The first predicate felony conviction relied upon by the district court, a controlled substance offense in violation of Iowa Code § 124.401(1)(c), is not in dispute.  The district court determined that the second predicate offense could be either the second controlled substance conviction arising out of Smith's first controlled substance conviction or Smith's conviction for the reckless use of a firearm, which it determined to be a crime of violence as defined by § 4B1.2.  Smith argues that the second controlled substance offense was not a separate conviction for purposes of U.S.S.G. §4A1.2(a)(2) and that the reckless use of a firearm is not a crime of violence.  In order to overturn his classification as a career criminal, Smith must succeed on both accounts.  However, because we affirm the district court's categorization of the reckless use of a firearm as a crime of violence, we need not decide whether Smith's two drug convictions are unrelated to one another.  *See* U.S.S.G. § 4A1.2(a)(2).

The commentary to § 4B1.1 directs the district court to the definition of crime of violence found in U.S.S.G. § 4B1.2.  U.S.S.G. § 4B1.1 cmt. 1.  There, a prior conviction may qualify as a crime of violence if it is an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2.  The guidelines definition of "crime of violence" found in § 4B1.2 is also viewed as interchangeable with the statutory definition of "violent felony" found in

18 U.S.C. § 924(e). *United States v. Johnson*, 326 F.3d 934, 936 (8th Cir. 2003) ("The definitions of 'violent felony' and 'crime of violence' are almost identical[.]"). Therefore, in determining whether a defendant has committed a predicate crime of violence for purposes of § 4B1.1, the district court is bound by our case law that is related to both crimes of violence under § 4B1.2 and violent felonies under § 924(e). *See United States v. Sprouse*, 394 F.3d 578, 580 (8th Cir. 2005) ("Because the definitions of crime of violence and violent felony are identical, the same analysis applies in determining whether [a defendant's] convictions fall within the conduct defined.").

The determination of whether an offense is a crime of violence requires a "categorical approach." *Taylor v. United States*, 495 U.S. 575, 602 (1990). When a sentencing court uses this categorical approach, it may look beyond the fact of conviction and the statutory definition of the offense to such sources as "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 125 S. Ct. 1254, 1263 (2005).

We review de novo whether a prior conviction constitutes a crime of violence under U.S.S.G. § 4B1.2. *United States v. Griffith*, 301 F.3d 880, 884-85 (8th Cir. 2002); *see also United States v. Sumlin*, 147 F.3d 763, 765 (8th Cir. 1998) ("We review the question of whether a prior offense constitutes a violent felony de novo.").

In Iowa, a person commits the aggravated misdemeanor offense of reckless use of a firearm when he "intentionally discharges a firearm in a reckless manner" that results in "property damage . . . without a serious injury or bodily injury occurring."

Iowa Code § 724.30.[2] "Reckless" is defined under Iowa law as the willful or wanton disregard for the safety of persons or property. Iowa Code § 702.16. As such, an intent to cause harm is not necessary; rather, the court "simply look[s] to whether the actor embarked on an activity which is known, or should be known, to pose a substantial risk to others." *State v. Conroy*, 604 N.W.2d 636, 638 (Iowa 2000).

Smith argues on appeal that the Iowa offense of reckless use of a firearm does not involve conduct that presents a serious potential risk of physical injury to another. Rather, Smith asserts that the offense as expressly charged merely involves damage to property and not bodily injury. This represents a misunderstanding of the offense and its requisite mental state. The actual damage caused by his reckless actions is relevant only to the extent of punishment and has no bearing on his commission of the crime. Instead, Smith's guilt resulted from his reckless actions that posed a substantial risk to others.

Though the proper categorization of the reckless use of a firearm is a question of first impression in this circuit, we have previously concluded that certain firearm offenses that do not necessarily result in or require physical injury constitute crimes of violence. For example, the possession of a short-barreled shotgun is a crime of violence even though it can be committed without ever discharging the firearm. *See, e.g.*, *United States v. Childs*, 403 F.3d 970, 971 (8th Cir. 2005). In *Childs*, we stated that the mere possession of a short-barreled shotgun is a crime of violence because the short-barreled shotgun is "inherently dangerous and lack[s] usefulness except for violent and criminal purposes." *Id.* By comparison, the reckless use of a firearm, which requires the firearm to be discharged, presents a greater risk of physical injury to another than possession of an inherently dangerous firearm.

---

[2]The term "crime of violence" as defined by § 4B1.2 includes any offense punishable by a term exceeding one year. In Iowa, an aggravated misdemeanor is punishable by a term not exceeding two years. Iowa Code § 903.1(b)(2).

Other courts have also concluded that offenses analogous to the reckless use of a weapon constitute crimes of violence. For example, the Seventh Circuit has held that firing a weapon at a vehicle is a crime of violence even where the weapon was discharged at property and not at people. *United States v. Cole*, 298 F.3d 659, 662 (7th Cir. 2002). Though the crime did not involve actual physical injury to another, the *Cole* court reasoned that "discharging a firearm is an inherently risky act." *Id.* (holding that an offense may be a crime of violence when there is a risk of harm to another even though there is no intent to harm). Likewise, the Sixth Circuit has recognized that firing a weapon toward another, even in jest, is a crime of violence. *See United States v. Rutledge*, 33 F.3d 671, 674 (6th Cir. 1994). This is because, even without the intent to cause injury, recklessly firing a weapon creates a serious risk of physical injury to another. *Id.* The common theme throughout these cases is that the recklessness of the act matters, not the intended target or actual victim. *See Shepard*, 125 S.Ct. at 1257-58 (recognizing that a court may not inquire into the particular facts of a prior conviction). This is because, at bottom, recklessly using a firearm around others always creates a serious risk of injury. *See* U.S.S.G. § 4B1.2(a)(2). Therefore, the district court properly held that the Iowa offense of the reckless use of a firearm is a crime of violence as defined by § 4B1.2.

Smith also argues that the categorization of the reckless use of a firearm as a crime of violence must be proven to a jury beyond a reasonable doubt. We have consistently rejected the applicability of *Booker* to the legal determination of whether a prior conviction may be categorized as a crime of violence. *See, e.g.*, *United States v. Johnson*, 411 F.3d 928, 931-32 (8th Cir. 2005). Furthermore, the categorization of an offense as a crime of violence is a legal question outside the purview of the Sixth Amendment. *See United States v. Camp*, 410 F.3d 1042, 1047 (8th Cir. 2005). Indeed, in both *Booker* and *Shepard*, the Supreme Court reaffirmed the duty of the sentencing court to take notice of a defendant's criminal history and, as a matter of law, determine whether any prior conviction is properly categorized as a crime of violence. *United States v. Marcussen*, 403 F.3d 982, 984 (8th Cir. 2005).

Accordingly, the district court properly found facts relating to Smith's criminal history and properly categorized the Iowa offense of recklessly using a firearm as a crime of violence.

Finally, Smith challenges the district court's reliance on mandatory guidelines. The district court calculated Smith's guidelines offense level under the career offender provisions of § 4B1.1, which relies solely upon the defendant's prior convictions for crimes of violence. The district court then imposed a sentence of 151 months based on mandatory guidelines and, alternatively, a sentence of 151 months based on the district court's discretion after considering the factors of 18 U.S.C. § 3553(a). While it was error to sentence Smith under a mandatory guidelines regime, that error was harmless in light of the district court's alternative discretionary sentence. *United States v. Bassett*, 406 F.3d 526, 527 (8th Cir. 2005).

## B.     Darrian Deangelis Jordan

Jordan's first argument on appeal is that the district court should have allowed him to withdraw his plea of guilty. Prior to sentencing, a defendant may withdraw a guilty plea if he can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). "Besides 'any fair and just reason,' a court should also consider whether the defendant has asserted his innocence to the charge, the length of time between the plea of guilty and the motion to withdraw, and whether the government will be prejudiced by the withdrawal." *United States v. Austin*, 413 F.3d 856, 857 (8th Cir. 2005). The "fair and just" standard is a liberal one, but it does not create an automatic right to withdraw a plea. *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996). The defendant bears the burden of proving why one of the recognized justifications should permit a withdrawal of what he had solemnly made under oath. *United States v. Morales*, 120 F.3d 744, 747-48 (8th Cir. 1997); Fed. R.

Crim. P. 11(d)(2)(B). If a defendant fails to establish a fair and just reason for withdrawing the guilty plea, the district court need not address the remaining factors. *Wicker*, 80 F.3d at 266.

Ultimately, "'a defendant has no absolute right to withdraw a guilty plea before sentencing,' and the decision to allow or deny the motion remains within the sound discretion of the trial court." *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 (8th Cir. 1989)). Therefore, we review the district court's denial of a motion to withdraw a plea of guilty for abuse of discretion. *Morales*, 120 F.3d at 747. Whether Jordan's plea was knowing and voluntary is a mixed question of law and fact that is reviewed de novo. *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998).

It is a well-established legal principle that a valid plea of guilty is an admission of guilt that waives all nonjurisdictional defects and defenses. *United States v. McNeely*, 20 F.3d 886, 888 (8th Cir. 1994). By entering a plea of guilty on March 31, 2004, therefore, Jordan effectively waived his right to appeal the denial of his suppression motion. *See United States v. Stewart*, 972 F.2d 216, 218 (8th Cir. 1992) (refusing to consider a denial of a suppression motion where the defendant entered a guilty plea). In order to resuscitate belatedly the suppression issue for appeal, Jordan attempted to withdraw his guilty plea so that he could enter either a conditional plea of guilty or a plea of not guilty.

Jordan's argument is perplexing for two reasons. First, Jordan could not enter a conditional plea of guilty without the Government's consent. Fed. R. Crim. P. 11(a)(2). This consent was not forthcoming at the time Jordan filed his motion to continue the notification deadline, and, given the Government's resistance to his motion to withdraw his guilty plea and to his appeal, there is no reason to believe that such consent would ever be forthcoming. Second, even if the Government had consented to a conditional plea of guilty, Jordan failed to object to the magistrate's

report and recommendation. *See United States v. James*, 353 F.3d 606, 612 (8th Cir. 2003). Consequently, Jordan's appeal of the adverse suppression ruling would be limited to the much more onerous plain error standard of review. *See Burns v. Gammon*, 260 F.3d 892, 898 (8th Cir. 2001).

Jordan also has not produced any evidence that shows he was unaware of the consequences of his plea of guilty. The district court went through the usual Rule 11 colloquy prior to accepting Jordan's guilty plea. This included informing Jordan of the consequences of pleading guilty, such as waiving the right to pursue his suppression motion. Therefore, the district court properly held that a belated desire to appeal a suppression ruling is not fair and just reason warranting the withdrawal of a plea of guilty. *See Hughes v. United States*, 371 F.2d 694, 695 (8th Cir. 1967).

For the first time on appeal, Jordan argues that the district court's standing scheduling order effectively coerced or otherwise rendered his guilty plea involuntary. He reasons that the standing scheduling order created the apparent dilemma of pursuing the motion to suppress evidence or receiving an additional level of reduction for acceptance of responsibility. Because he did not raise this issue before the district court, we will review the argument for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Harrison*, 393 F.3d 805, 806 (8th Cir. 2005).

"Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). Substantial rights are affected where there is "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 124 S.Ct. 2333, 2339 (2004) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467.

After thoroughly reviewing the record, we do not find any evidence that Jordan's plea of guilty was coerced or involuntary. First, the district court entertained a motion to continue the notification deadline and did not abuse its discretion in denying that motion. *Cf. United States v. Kolbe*, 109 Fed. Appx. 129, 130 (8th Cir. 2004) (unpub.) (per curiam) (affirming a denial of an additional level reduction under Judge Reade's standing scheduling order where the defendant failed to enter a timely notification of intention to plead guilty). This is because the district court has "broad discretion to control the scheduling of events in matters on its docket." *Jones v. Clinton*, 72 F.3d 1354, 1361 (8th Cir. 1996). The district court's ability to manage its own docket includes the ability to make decisions regarding the deadline for pretrial filings, Fed. R. Crim. P. 12(c), and whether to grant a motion to continue that deadline. *United States v. Vesey*, 330 F.3d 1070, 1072 (8th Cir. 2003) ("District courts are afforded broad discretion when ruling on requests for continuances."). In Jordan's case, the scheduling of pretrial deadlines fits squarely into the district court's ability to manage its own docket. The standing scheduling order was not so inflexible as to deny automatically Jordan's attempt to continue the notification deadline in order to pursue his suppression motion. The district court entertained both a motion to continue the notification deadline and a reconsideration of its denial of that motion.

Second, Jordan's co-defendant, Smith, who technically also failed to comply with the notification deadline, still obtained a full three-level reduction for acceptance of responsibility. This tends to show that the district court was willing to consider extenuating circumstances that existed at the time of the notification deadline. Regardless, as discussed below, the availability of an additional level of reduction was dependent in the first instance on the Government's motion. Given the district court's concern for judicial economy in the face of a substantial criminal case load, therefore, we cannot say that its standing scheduling order coerced or otherwise rendered as involuntary Jordan's plea of guilty. *United States v. Ware*, 890 F.2d 1008, 1010 (8th Cir. 1989) ("[F]actors to be examined by the trial court when exercising its discretion . . . include time required and already permitted for trial

preparation, diligence of the moving party, conduct of the other party, the effect of delay, and the reasons movant gives for needing a continuance."); *cf. United States v. Ervasti*, 201 F.3d 1029, 1044-45 (8th Cir. 2000) (recognizing judicial economy and the government's trial preparations as considerations for a § 3E1.1(b) reduction).

Jordan also cannot show that, absent the notification deadline, he would have obtained an additional level of reduction for acceptance of responsibility or he would have prevailed on an appeal of the suppression ruling. With regard to the former, simply meeting the notification deadline did not guarantee that the Government would file the required motion for an additional level of reduction under § 3E1.1(b). Further, a denial of an acceptance-of-responsibility reduction is not a fair and just reason for withdrawing a plea of guilty. *United States v. Has No Horse*, 261 F.3d 744, 749 (8th Cir. 2001). With regard to the suppression ruling, the district court did not plainly err in denying Jordan's motion to suppress evidence. *See United States v. Edwards*, 415 U.S. 800, 802-03 (1974) (recognizing a search incidental to an arrest as an exception to the Fourth Amendment); *United States v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997) (affirming denial of a *Franks* hearing where the defendant offers nothing more than mere allegations). As a result, any harm suffered by Jordan is speculative and does not rise to the level of affecting his substantial rights. *United States v. Pirani*, 406 F.3d 543, 553 (8th Cir. 2005) (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005), for the proposition that "where the effect of the error on the result in the district court is uncertain or indeterminate – where we would have to speculate – the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error").

Jordan next argues that the Government and the district court unreasonably withheld the third level of reduction for acceptance of responsibility. A defendant who pleads guilty is not entitled to an additional level of reduction as a matter of right. *United States v. McQuay*, 7 F.3d 800, 802 (8th Cir. 1993) (quoting U.S.S.G. §3E1.1, cmt. n.3). An additional level of reduction for acceptance of responsibility

is warranted where "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing." U.S.S.G. § 3E1.1(b), cmt. 6. However, such a reduction is generally appropriate only where the defendant has "notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently." *Id.* Therefore, the Government's failure to file a § 3E1.1(b) motion must be rationally related to a legitimate governmental end, *United States v. Borer*, 412 F.3d 987, 991 n.4 (8th Cir. 2005), and the district court's failure to grant a § 3E1.1(b) reduction must not be clear error, *see United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). However, since Jordan failed to raise this issue before the district court, he is entitled only to plain-error review. Fed. R. Crim. P. 52(b).

Jordan does not articulate any reason for error except that the Government and the district court were being unreasonable.[3] However, Jordan's conduct prior to sentencing was arguably overly dilatory and certainly contrary to his admission of guilty. For example, Jordan filed a motion to suppress evidence less than a month

---

[3]As discussed previously, neither the Government nor Jordan asked at sentencing for the full three-level reduction for acceptance of responsibility. In light of the PROTECT Act's limitation on the granting of the third level, there was no basis for the district court to grant such a reduction *sua sponte*. *See* Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L.No. 108-21, § 401(g)(2)(B), 117 Stat. 650, 671-72 (April 30, 2003).

before the scheduled trial date and a motion to continue the notification deadline on the date notification was due. He also entered a plea of guilty and then attempted to withdraw that plea. Indeed, in light of his attempts to withdraw his guilty plea, Jordan was fortunate to receive a two-level reduction for acceptance of responsibility. *See United States v. Newson*, 46 F.3d 730, 734 (8th Cir. 1995) (affirming the denial of an acceptance-of-responsibility reduction where the defendant attempted to withdraw his guilty plea). Therefore, the Government's decision to not bring a § 3E1.1(b) motion was not improper, and the district court's failure to grant a § 3E1.1(b) reduction was not clear error. Consequently, Jordan cannot meet the high standard of plain error.

Next, Jordan argues that the facts of his prior convictions, necessary to establish his status as a career offender under § 4B1.1, must be admitted or proven to a jury. Again, we have consistently rejected the applicability of *Booker* to the fact of a prior conviction, *see, e.g.*, *United States v. Paz*, 411 F.3d 906, 909 (8th Cir. 2005). Accordingly, the district court properly found facts relating to Jordan's criminal history.

Finally, Jordan challenges obliquely the reasonableness of his sentence. *See United States v. Mashek*, 406 F.3d 1012, 1107 (8th Cir. 2005) ("[T]he second step of our [*Booker*] analysis [is] a review of any challenge to the reasonableness of the sentence in light of § 3553(a)." (emphasis added)). He appears to argue that his sentence is unreasonable because the district court denied an additional level of reduction, applied the guidelines in a mandatory fashion and violated 18 U.S.C. § 3553(c) when it failed to articulate the reasons for imposing its alternative sentence.

The proper application of the guidelines under an advisory regime is a separate inquiry from the reasonableness of the sentence imposed. *See Mashek*, 406 F.3d at 1012 (discussing the two-step process for reviewing a challenge to a sentence). As discussed above, the district court did not err in not granting a reduction of one

additional level. Further, the mandatory application of the guidelines, without factual findings in violation of the Sixth Amendment, is harmless error "unless there is grave doubt as to whether the defendant would have received a more favorable sentence under an advisory guidelines system." *United States v. Perez-Ramirez*, 415 F.3d 876, 877 (8th Cir. 2005) (articulating the harmless-error standard for a *Booker* non-constitutional error). Any reliance by the district court on the mandatory guidelines is harmless in light of the district court's alternative discretionary sentence. *Marcussen*, 403 F.3d at 985. Finally, the district court discussed in open court the factors it considered and relied upon in imposing its alternative sentences, including the nature and circumstances of the offense and the history and characteristics of Jordan, § 3553(a)(1), the need for deterrence, § 3553(a)(2)(B), the protection of society from further criminal conduct by Jordan, § 3553(a)(2)(B), (C), and the advisory guidelines range, § 3553(a)(4). Thus, the district court met its obligation under 18 U.S.C. § 3553(c) that it "state in open court the reasons for its imposition of the particular sentence." Therefore, Jordan's sentence is proper and reasonable. *See United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005) (holding that a "sentence imposed . . . consistent with the now-advisory guidelines . . . is generally indicative of reasonableness").

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's sentences with respect to Smith and Jordan.

HEANEY, Circuit Judge, concurring.

I concur because I agree with the majority that the district court's scheduling order did not render Darrian Jordan's guilty plea involuntary, and because there is no indication that the government arbitrarily withheld its motion for the third level of the acceptance of responsibility adjustment. *Cf. Wade v. United States*, 504 U.S. 181,

186-87 (1992) (holding that the district court may compel the government to move for a sentence reduction based on a defendant's substantial assistance where the government's failure to do so is not rationally related to a legitimate government end). However, I write separately to question a scheduling order that exposes a defendant to Jordan's dilemma of either litigating his suppression motion or qualifying for the full three-level acceptance of responsibility adjustment.

This is not the first time our court has been presented with this hurried approach to case scheduling. In *United States v. Kolbe*, 109 Fed. App. 129 (8th Cir. 2004) (unpublished per curiam), we were faced with a similar scheduling order. There, the district court denied the defendant the third level of the acceptance of responsibility adjustment because he pled guilty three days after the district court's deadline, but before the court had decided the merits of his suppression motion. It was certainly not our intention, in affirming that defendant's sentence, to suggest a court may regularly order defendants to make up their minds to plead guilty or not guilty before even receiving a hearing on potentially dispositive motions. Such a procedure strikes me as unfair to the defendant, and I question the majority's assertion that it "fits squarely into the district court's ability to manage its own docket." *Ante* at 13. As Judge John R. Gibson recently reminded district courts, the goal of clearing crowded dockets cannot take precedence over the interests of the parties. *Catipovic v. Peoples Cmty. Health Clinic*, 401 F.3d 952, 958-59 (8th Cir. 2005) (Gibson, J. concurring). That notion bears repeating here: Judicial efficiency is an important concern, but it does not eclipse society's interest in protecting the accused's right to a fair proceeding. In Jordan's case, however, the record supports the sentence imposed, and thus I concur.

_____