MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring.

UNITED STATES of America, Appellee,

v.

**Frank Christian NICHOLS, Appellant.**

UNITED STATES of America, Appellee,

v.

**Michael CHAMBLISS, Appellant.**

Nos. 92–2964, 92–2966.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided Feb. 25, 1993.

Rehearing Denied in No. 92–2966 April 23, 1993.

Rehearing Denied in No. 92–2964 April 26, 1993.

Each defendant appeals the trial court's refusal to allow him to withdraw his guilty plea. In addition, Mr. Nichols challenges various factual findings made by the trial court in determining the appropriate range for Mr. Nichols's punishment under the federal sentencing guidelines. We affirm the trial court in all respects.

I.

■ Under Fed.R.Crim.P. 32(d), the trial court may permit withdrawal of a guilty plea "upon a showing by the defendant of any fair and just reason." A defendant has no absolute right to withdraw a guilty plea. *See, e.g., United States v. Boone*, 869 F.2d 1089, 1091 (8th Cir.1989), *cert. denied*, 493 U.S. 822, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989). We review a trial court's denial of a motion to withdraw a guilty plea under a standard of abuse of discretion. *See, e.g., United States v. Morrison*, 967 F.2d 264, 268 (8th Cir.1992).

■ The matters to be considered by a trial court with respect to a motion to withdraw a guilty plea are whether the defendant establishes a fair and just reason, whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion. *See, e.g., United States v. Boone*, 869 F.2d at 1091–92. If the defendant fails to establish a fair and just reason for withdrawing the guilty plea, the trial court need not address the remaining considerations. *See, e.g., United States v. Abdullah*, 947 F.2d 306, 311 (8th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1969, 118 L.Ed.2d 569 (1992). We hold that the evidence specified by Mr. Chambliss as his reason for seeking to withdraw his guilty plea is at best only a source of impeachment material and does not constitute a sufficient reason in the circumstances of

J. Blake Hendrix, Little Rock, AR, argued, for appellant Frank Nichols.

Q. Byrum Hurst, Jr., Hot Springs, AR, argued, for appellant Michael Chambliss.

Kevin T. Alexander, Asst. U.S. Atty., Little Rock, AR, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and HAMILTON,* District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In late 1991, Frank Nichols and Michael Chambliss each pleaded guilty in federal court to two counts of conspiracy to possess illegal drugs with intent to distribute. A third count was subsequently dismissed on motion of the government. In August, 1992, the trial court[1] sentenced Mr. Nichols to 200 months of imprisonment and Mr. Chambliss to 91 months of imprisonment plus a $25,000 fine.

---

* The HONORABLE JEAN C. HAMILTON, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

this case for allowing him to withdraw his guilty plea.

Mr. Chambliss moved at least twice to withdraw his guilty plea. In March, 1992, he asserted that his plea had been induced by a government promise to move for a downward departure from the federal sentencing guidelines and that the government had subsequently withdrawn that promise. The motion was referred to a magistrate. After a hearing, the magistrate recommended that the motion be granted and that Mr. Chambliss be allowed to withdraw his guilty plea. The trial court set a hearing to consider the motion, but on the day of the hearing both the government and Mr. Chambliss advised the court that the motion was moot.

Mr. Chambliss had two lawyers during the course of this case. The first one filed discovery motions, entered into plea negotiations with the government, and represented Mr. Chambliss when he pleaded guilty. A second lawyer entered an appearance in early 1992 and filed Mr. Chambliss's initial motion to withdraw his guilty plea. The first lawyer evidently withdrew around that time (the trial court records are vague on this point), probably because he was needed as a witness in the hearing on Mr. Chambliss's motion to withdraw his guilty plea. The second lawyer therefore represented Mr. Chambliss at the hearing on that motion and at sentencing, when Mr. Chambliss sought to withdraw his guilty plea the second time.

In testimony on the day of sentencing, the undercover government agent who was the primary witness against Mr. Nichols and Mr. Chambliss referred to a case synopsis sent to his superiors. That document states that "no deal was consummated and no arrests made"; that "[t]here appears no way to consummate the reverse sting operation" involving Mr. Nichols, Mr. Chambliss, and Stacy Elam, a third co-defendant; and that the case "will be considered closed." After this evidence was presented, Mr. Chambliss moved both orally and in writing to renew the motion to withdraw his guilty plea. He asserted, first, that the government had indicated that it would

again decline to move for a downward departure; second, that the applicable guideline range had turned out to be much higher "than anyone expected" and failed to take into account Mr. Chambliss's "very limited involvement" in the offenses charged; third, that no agreement between the co-conspirators named in the indictment (Mr. Nichols, Mr. Chambliss, and Ms. Elam) had ever been reached and, therefore, that he was innocent as a matter of law of the conspiracies charged; and, fourth, that only during the sentencing hearing had Mr. Chambliss and his lawyer learned that the undercover government agent had "closed the case" with respect to Mr. Chambliss even before the indictment was filed.

Mr. Chambliss then refused to testify when called by the government as a witness against Mr. Nichols. At that point, the government moved in open court for a downward departure as to Mr. Chambliss (even though the sentencing being considered at that time was for Mr. Nichols) and stated that the motion would be renewed when the court took up the question of sentencing for Mr. Chambliss. The trial court subsequently rejected Mr. Chambliss's remaining arguments and denied his motion to withdraw his guilty plea.

On appeal, the only ground asserted by Mr. Chambliss in support of his motion to withdraw his guilty plea is that his plea was induced by the representations of his first lawyer to him that the government's case against him was strong. According to Mr. Chambliss, neither he nor his second lawyer knew until the day of sentencing, when the undercover government agent testified, that because no sale was ever made between the undercover government agent and the three defendants charged, the undercover government agent had closed the investigative file even before the indictment was issued. Mr. Chambliss now argues that if he had known that the undercover government agent had closed the investigative file, he never would have pleaded guilty.

Mr. Chambliss concedes that his first lawyer did receive in discovery materials the document revealing that the case

against him had been closed. He contends, however, that he himself was unaware of the document and that his second lawyer was likewise unaware of it. He asserts, therefore, that his guilty plea was the result of mistake and that, under these circumstances, it was an abuse of discretion not to allow him to withdraw it.

It is true that the language in several cases alludes to mistake as a basis for allowing a defendant to withdraw a guilty plea. *See, e.g., DeLeon v. United States,* 355 F.2d 286, 289 (5th Cir.1966); *United States v. Davis,* 212 F.2d 264, 267 (7th Cir.1954); and *Bergen v. United States,* 145 F.2d 181, 187 (8th Cir.1944). Those cases, however, all deal with circumstances where a defendant did not understand the nature of the offense charged. *See, e.g., DeLeon,* 355 F.2d at 287 n. 1, 288 (defendant thought charge related to knowing people involved in illegal drug transactions; charge was actually receiving, hiding, and transporting illegal drugs); *United States v. Davis,* 212 F.2d at 266–68, 270 (defendant thought charge was conspiracy to commit drug offense; charge was actually hiding and selling illegal drugs); and *Bergen,* 145 F.2d at 183–86 (defendant thought charge was soliciting bankruptcy filings from farmers; charge was actually conspiracy to defraud government lending agencies by soliciting bankruptcy filings based on false appraisals of farm properties). It is clear from the transcript of the plea hearing that Mr. Chambliss understood the nature of the charges against him, and he does not argue otherwise on appeal.

Mr. Chambliss's argument is, instead, that he relied on his first lawyer's representations to him that the case against him was strong, that he had no independent knowledge that the undercover government agent had closed the investigative file, and that these circumstances present a "fair and just reason," *see* Fed.R.Crim.P. 32(d), for allowing him to withdraw his guilty plea. To the contrary, it is well settled that "the exercise of mistaken judgment by counsel is not ground to successfully assert involuntariness of a plea" sufficient to amount to a fair and just reason for later withdrawing it. *United States v. Briscoe,*

428 F.2d 954, 956 n. 3 (8th Cir.1970), *cert. denied,* 400 U.S. 966, 91 S.Ct. 378, 27 L.Ed.2d 386 (1970). *See also United States v. Nigro,* 262 F.2d 783, 787 (3d Cir. 1959) (fact that defendant was "influenced by his counsel to plead guilty" not enough to justify withdrawal of plea).

Even characterizing as newly discovered evidence the document closing the investigative file offers Mr. Chambliss no relief in the circumstances of this case. The document does not reveal a defense previously unknown to Mr. Chambliss but at most, in our view, a source of impeachment material that could be used against the undercover government agent at a trial. *See, e.g., United States v. Morrison,* 967 F.2d at 268–69. (Indeed, the lawyers for both Mr. Nichols and Mr. Chambliss attempted to impeach the undercover government agent's testimony with the document during the sentencing hearing.)

We find no abuse of discretion in the trial court's refusal to allow Mr. Chambliss to withdraw his guilty plea. We therefore affirm that ruling by the trial court.

## II.

Mr. Nichols moved both orally and in writing on the day of sentencing to withdraw his guilty plea. He gave three reasons for his request—that he had misunderstood the charges to which he pleaded, thinking that they referred to a conspiracy only between him and an undercover government agent, a conspiracy that as a matter of law was not an indictable criminal offense; that his plea had been induced by the government's representation that Mr. Chambliss would plead guilty and would testify against him, but that on the day of sentencing, Mr. Chambliss had unexpectedly moved to withdraw his own plea, had declared his own and Mr. Nichols's innocence of the charges, and had refused to testify against Mr. Nichols; and that no agreement between the alleged co-conspirators had ever been reached and, therefore, that he was innocent as a matter of law of the conspiracies charged. The trial court

rejected all of these grounds and denied Mr. Nichols's motion.

■ Two indictments were filed in this case, one in June, 1991, and a superseding one in October, 1991. The second indictment contains three counts, each charging a conspiracy to possess an illegal drug with intent to distribute. Mr. Nichols is correct that a conspiracy between him and an undercover government agent would, as a matter of law, not be an indictable crime. *See, e.g., United States v. Moss,* 591 F.2d 428, 434 n. 8 (8th Cir.1979). The transcript of Mr. Nichols's plea hearing makes clear, however, that he received a copy of the superseding indictment during that hearing, examined it, and declined three times the opportunity for a recess to consult privately with his lawyer about it. That indictment lists the alleged co-conspirators as Mr. Nichols, Mr. Chambliss, and Ms. Elam. On inquiry by the trial court as to whether he was pleading "freely and voluntarily" because he had "committed the acts charged in the indictment," Mr. Nichols responded, "Yes, Your Honor." In light of these circumstances, there was no abuse of discretion in the trial court's rejection of this ground as a reason to allow Mr. Nichols to withdraw his guilty plea.

■ As to Mr. Chambliss's unexpected refusal to testify against Mr. Nichols, it has been held that even where the government's principal witness dies, it is not an abuse of discretion to deny a defendant's motion to withdraw a guilty plea. *See United States v. Vasquez–Velasco,* 471 F.2d 294, 294–95 (9th Cir.1973) (*per curiam*), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973). The third co-defendant, Ms. Elam, did testify at Mr. Nichols's sentencing hearing, moreover, and offered considerable evidence of Mr. Nichols's guilt of the conspiracies charged. Presumably she would have done so at a trial as well. The undercover government agent also testified and provided additional evidence of Mr. Nichols's participation in those conspiracies. Under these circumstances, we hold that the trial court did not abuse its discretion in denying Mr. Nichols's motion to withdraw his guilty plea.

## III.

■ Under the federal sentencing guidelines, acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction" may be considered relevant conduct in determining the base offense level for sentencing purposes, *see* U.S.S.G. § 1B1.3(a)(2), even if those acts were included in counts that were later dismissed or even if those acts were never charged at all. *See* U.S.S.G. § 1B1.3, application note 3, previously note 2. When a defendant is convicted of conspiracy involving illegal drugs, the base offense level is to be the same as if the object of the conspiracy had been completed. *See* U.S.S.G. § 2D1.1, previously § 2D1.4(a).

If the conviction is for an offense "involving negotiation to traffic" in illegal drugs, the "weight under negotiation in an uncompleted distribution" is to be used to determine the applicable amount of drugs, unless the trial court finds that "the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount." *See* U.S.S.G. § 2D1.1, application note 12, previously § 2D1.4, application note 1. In the circumstances of this case, where the undercover government agent was purportedly selling the drugs to Mr. Nichols, we construe the language of the guideline application note as referring to purchase or acquisition by Mr. Nichols for subsequent distribution rather than to initial production by Mr. Nichols. *See, e.g., United States v. Brown,* 946 F.2d 58, 60 n. 3 (8th Cir.1991); *see also United States v. O'Meara,* 895 F.2d 1216, 1220–21 (8th Cir. 1990), *cert. denied,* 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990).

The indictment in this case charged Mr. Nichols with three counts of conspiracy to possess illegal drugs with intent to distribute. The first count referred to a kilogram of methamphetamine, the second count to a kilogram of cocaine, and the third count to 50 pounds of marijuana. Mr. Nichols pleaded guilty to the first two counts; the third count was dismissed on motion of the government. At sentencing, the trial court

included in the determination of amounts relevant to base offense level the kilogram of methamphetamine from the first count, the kilogram of cocaine from the second count, and 30 pounds of marijuana from the third count.

On appeal, Mr. Nichols argues that no agreement on the details of the acquisitions discussed was ever reached and therefore that it cannot be said that he ever intended to acquire those amounts. He further argues that, in any event, he was never reasonably capable of acquiring those amounts. We review the trial court's determination of the amounts applicable under a clearly erroneous standard. *See, e.g., United States v. Simmons,* 964 F.2d 763, 773 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992).

We turn first to the kilogram of methamphetamine. According to the testimony of the undercover government agent, Mr. Nichols initiated multiple discussions in which he expressed the desire to obtain from the undercover government agent a kilogram of methamphetamine, which Mr. Nichols would then sell to a third person. The transcripts of telephone conversations summarized or quoted by the undercover government agent and the lawyers during the sentencing hearing, and admitted by the trial court as evidence, substantiate this testimony; Ms. Elam also testified to this effect. The price agreed on by Mr. Nichols and the undercover government agent for a kilogram of methamphetamine was $24,000.

It is true that Mr. Nichols related to the undercover government agent that the wrong price had been quoted to the eventual buyer and that the buyer was reluctant to pay the actual price negotiated by Mr. Nichols and the undercover government agent. Nonetheless, it is fair to conclude from the testimony and the transcripts that Mr. Nichols intended to obtain the kilogram of methamphetamine.

The undercover government agent also testified that Mr. Nichols had asked whether the undercover government agent would "front" the kilogram of methamphetamine to him under an arrangement where Mr. Nichols would pay the undercover government agent for the drugs after they had been sold to others. Although the record is not explicit on the point, it is fair to infer from the undercover government agent's testimony that he had agreed to such an arrangement; Ms. Elam's testimony also tends to support this inference.

Under the circumstances of this case, we hold that it was not clearly erroneous for the trial court to find that one kilogram of methamphetamine was under negotiation, that Mr. Nichols intended to obtain that amount, and that Mr. Nichols was reasonably capable of obtaining that amount. *See, e.g., United States v. Burrell,* 963 F.2d 976, 994–95 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992); *United States v. Panet–Collazo,* 960 F.2d 256, 261 (1st Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 220, 121 L.Ed.2d 158 (1992); and *United States v. Brooks,* 957 F.2d 1138, 1151–52 (4th Cir. 1992), *cert. denied,* — U.S. —, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992); *see also United States v. Cea,* 963 F.2d 1027, 1031 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992).

As for the kilogram of cocaine, the testimony of the undercover government agent was that Mr. Nichols had suggested that he could "move that much in a month's time" and "wanted to purchase" that amount. The price agreed on for that amount was $24,000. The undercover government agent also testified that he and Mr. Nichols had discussed "fronting" the cocaine, that is, the undercover government agent's providing the cocaine and being paid by Mr. Nichols after its sale to others.

The testimony of the undercover government agent and the transcripts of the telephone conversations are not as extensive with respect to the kilogram of cocaine. Nonetheless, the record contains enough evidence for us to conclude that the trial court was not clearly erroneous in finding that one kilogram of cocaine was under negotiation, that Mr. Nichols intended to obtain that amount, and that Mr. Nichols was reasonably capable of obtaining that amount.

In regard to the 30 pounds of marijuana, the undercover government agent testified that Mr. Nichols had said that "they were moving or could move pretty easy in a week, in a week's time," that amount. The undercover government agent testified that he and Mr. Nichols had discussed an arrangement for partial payment on the marijuana, with the balance to be paid after resale of the drug by Mr. Nichols. The price under those conditions was $900 per pound.

It is true that the undercover government agent testified that Mr. Nichols had stated that his cash for marijuana was already committed to another seller, in repayment of a loan from the other seller to Mr. Nichols. It is also true, however, that over the course of the investigation, Mr. Nichols was steadily reducing the amount he owed to the other seller and reported that fact to the undercover government agent. From the evidence in the record, we do not believe that it is too speculative to infer either that Mr. Nichols planned to begin buying marijuana from the undercover government agent once the loan was paid off or that Mr. Nichols was contemplating splitting his purchases of marijuana between the other seller and the undercover government agent.

On this record, we hold that it was not clearly erroneous for the trial court to find that 30 pounds of marijuana were under negotiation, that Mr. Nichols intended to obtain that amount, and that Mr. Nichols was reasonably capable of obtaining that amount. *See, e.g., United States v. Burrell,* 963 F.2d at 994, and *United States v. Panet–Collazo,* 960 F.2d at 261; *see also United States v. Cea,* 963 F.2d at 1031, and *United States v. Ehret,* 885 F.2d 441, 445 (8th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).

## IV.

■ Finding that other drug sales conducted by Mr. Nichols (but not included in the indictment) were part of the same course of conduct as the offenses for which Mr. Nichols was convicted, *see* U.S.S.G. § 1B1.3(a)(2), the trial court held Mr. Nich-

ols accountable for ten pounds of marijuana per week and a half-ounce of cocaine per week over an 18–week period, for a total of 180 pounds of marijuana and nine ounces of cocaine. On appeal, Mr. Nichols does not dispute those amounts but does contend that those transactions were not part of the same course of conduct as his dealings with the undercover government agent. The essence of Mr. Nichols's argument is that the other drug sales were over a longer period of time than his dealings with the undercover government agent, involved different quantities of drugs, and related to different buyers from those for the drugs he anticipated receiving from the undercover government agent. Mr. Nichols also argues that in the uncharged transactions, he was the seller, whereas he was anticipating being the buyer in his dealings with the undercover government agent.

Mr. Nichols raised this argument in the trial court only obliquely. Nonetheless, we address it in the interests of thoroughness. We do so with the recognition, however, that this issue "is a fact intensive inquiry in which the district court is given broad discretion to assess the relevant facts." *United States v. Montoya,* 952 F.2d 226, 229 (8th Cir.1991). We will reverse a trial court's findings on this question only if they are clearly erroneous. *See, e.g., United States v. Gooden,* 892 F.2d 725, 728 (8th Cir.1989), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990).

The other drug sales took place over a longer period of time than Mr. Nichols's dealings with the undercover government agent. Some of those sales did, however, occur during the same period of time as the offenses of which Mr. Nichols was convicted. The undercover government agent testified that he had witnessed sales of both cocaine and marijuana by Mr. Nichols; Ms. Elam testified to that effect as well. In Mr. Nichols's dealings with the undercover government agent, Mr. Nichols negotiated for the purchase of cocaine, marijuana, and methamphetamine.

The quantity of marijuana for which Mr. Nichols was negotiating with the undercover government agent was apparently larg-

er than the quantity that Mr. Nichols normally kept on hand, but we do not think that the difference in quantity was so great as to be significant as a matter of law. (There is no evidence in the record with respect to the amount of cocaine that Mr. Nichols customarily kept on hand.) It is clear from the record that the anticipated methamphetamine purchase was for a particular buyer, but there is nothing in the record to contradict the conclusion that the buyers for the cocaine and the marijuana that Mr. Nichols anticipated obtaining from the undercover government agent would be any different from those who were already buying the cocaine and marijuana that Mr. Nichols acquired from other suppliers. Finally, all of Mr. Nichols's transactions—with the people who bought drugs from him, with other suppliers, and with the undercover government agent—took place in Arkansas.

On this record, we hold that it was not clearly erroneous for the trial court to find that Mr. Nichols's other drug transactions were part of the same course of conduct as his dealings with the undercover government agent. Accordingly, we affirm the trial court on this question. *See, e.g., United States v. Lawrence*, 915 F.2d 402, 407–08 (8th Cir.1990), and *United States v. Gooden*, 892 F.2d at 729.

## V.

Under U.S.S.G. § 3B1.1(a), the trial court may increase the base offense level of a defendant for sentencing purposes if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The criminal activity to be considered includes all conduct found to be relevant in the determination of base offense level. *See* U.S.S.G. § 3B1, introductory commentary.

In the sentencing hearing, the trial court found that Mr. Nichols "had perhaps more than five persons working under him" and therefore that an increase in base offense level was appropriate with respect to him. In its written statement of reasons for the sentence given to Mr. Nichols, the trial court stated that "the evidence shows that [Mr. Nichols's] activities were 'extensive' within the meaning of [the guidelines] and involved five or six people." On appeal, Mr. Nichols challenges the increase in base offense level attributable to these findings by the trial court. The predicate for Mr. Nichols's argument is that the uncharged drug sales were not within the same course of conduct as the offenses for which he was convicted, that they were therefore not relevant conduct under the guidelines, that there were fewer than five participants in the transactions related to his dealings with the undercover government agent, and, accordingly, that the trial court erred in increasing Mr. Nichols's base offense level pursuant to U.S.S.G. § 3B1.1(a).

The testimony of the undercover government agent and Ms. Elam established that at least seven people other than Mr. Nichols were involved in the distribution for resale of cocaine and marijuana—"an unidentified white male" who bought cocaine; "three black men" who bought marijuana; David Cooper, who sold marijuana for Mr. Nichols; Ms. Elam, who sold marijuana for Mr. Nichols; and Mr. Chambliss, who sold both cocaine and marijuana for Mr. Nichols.

We have affirmed the trial court's findings that these acts were relevant conduct with respect to a determination of Mr. Nichols's base offense level. We therefore affirm as well the trial court's application of U.S.S.G. § 3B1.1(a) to Mr. Nichols.

## VI.

For the reasons stated, the trial court is affirmed in all respects.