# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2820

_____

United States of America

*Plaintiff - Appellee*

v.

Richard Johnson

*Defendant - Appellant*

_____

No. 12-2863

_____

United States of America

*Plaintiff - Appellee*

v.

Detric Conway

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: March 15, 2013
Filed: June 12, 2013
[Unpublished]

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Detric Conway pleaded guilty, pursuant to a plea agreement, to interference with commerce by robbery on June 21, 2010, in violation of 18 U.S.C. § 1951(a) ("Count 1"); using, carrying, and possessing a firearm in furtherance of a crime of violence, that is interference with commerce by robbery on June 21, 2010, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 2"); robbery involving a controlled substance, aiding and abetting, on July 13, 2010, in violation of 18 U.S.C. §§ 2118(a) 2118(c)(1), and 2 ("Count 5"); and using, carrying, and possessing a firearm in furtherance of a crime of violence, that is robbery involving a controlled substance, aiding and abetting, on July 13, 2010, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 6"). Richard Johnson pleaded guilty, pursuant to a plea agreement, to Count 6 and using, carrying, and possessing a firearm in furtherance of a drug trafficking crime, that is possession with intent to distribute a controlled substance (hydrocodone), aiding and abetting, on July 13, 2010, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 8"). On appeal, Conway and Johnson argue that the district court[1] abused its discretion in denying their motions to withdraw their guilty pleas. We affirm.

I. *Background*

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

Conway was charged with eight offenses[2] stemming from his alleged participation in two pharmacy robberies. Johnson was charged with four of the eight offenses[3] for his alleged participation in one of the pharmacy robberies.

## A. *Conway*

Conway subsequently pleaded guilty pursuant to a plea agreement to Counts 1, 2, 5, and 6 of the indictment. Paragraph 17 of the plea agreement discussed Conway's cooperation, providing:

> 17.    The government agrees to advise the probation office and the court of the extent and nature of the defendant's cooperation. The defendant's agreement to cooperate with the government is made pursuant to U.S.S.G. [§] 1B1.8(a) & (b). If the defendant provides full, complete, truthful, and substantial cooperation to the government, *the government reserves the complete right to make the decision on the nature and extent of the defendant's cooperation*, and then will move for a downward departure under U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Rule 35 of the Federal Rules of Criminal Procedure. Both parties acknowledge that the district court has the power to deny a motion for downward departure. *The defendant hereby agrees that the government*

---

[2]In addition to Counts 1, 2, 5, and 6, the indictment also charged Conway with knowingly and intentionally possessing with intent to distribute hydrocodone, a Schedule II controlled substance on June 21, 2010, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count 3"); knowingly using, carrying, and possessing a firearm in furtherance of a drug trafficking crime—possession with intent to distribute hydrocodone as charged in Count 3—in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 4"); knowingly and intentionally possessing with the intent to distribute hydrocodone, a Schedule II controlled substance, aiding and abetting, on July 13, 2010, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(C), and 2 ("Count 7"); and Count 8.

[3]In addition to Counts 6 and 8, the indictment also charged Johnson with Counts 5 and 7.

*does not promise, by the terms of this agreement, to file a Section 5K1.1, 18 U.S.C. § 3553(e) or Rule 35 motion.*

(Emphases added.)

During the change-of-plea hearing, Conway acknowledged under oath that his attorney had explained the nature of the charges against him, that his "willingness to plead guilty . . . resulted in [a] 14-page [plea] agreement" with the government, and that he had signed the plea agreement. Conway agreed that the "plea agreement . . . contain[ed] [his] full understanding of what [he] negotiated with the government," he "underst[oo]d the agreement," no one made him "any promises or assurances . . . other than what's reflected in th[e] agreement itself," and no one had "in any way attempted to force [him] to plead guilty." Conway confirmed that he was "pleading guilty of [his] own free will because [he is] guilty."

The court then reviewed the penalties set forth in the plea agreement and confirmed Conway's understanding that he was subject to (1) a maximum term of 20 years' imprisonment on Count 1; (2) a maximum term of life imprisonment and a mandatory minimum term of seven years' imprisonment on Count 2; (3) a maximum term of 25 years' imprisonment on Count 5; and (4) a maximum term of life imprisonment and a mandatory minimum term of 25 years' imprisonment on Count 6. The court also asked Conway whether he had discussed with his attorney the plea agreement's statement that Count 6 "shall not run concurrently with any other term of imprisonment imposed." Conway replied that he had discussed the statement and understood it, stating, "It will be like stacked, 25 plus seven."

Before accepting Conway's guilty pleas to Counts 1, 2, 5, and 6, the district court inquired whether Conway "need[ed] to discuss anything with [his] attorney," and Conway responded, "No, sir." Conway then pleaded guilty to the aforementioned counts, and the district court accepted the guilty pleas after finding that Conway was

-4-

"fully competent and capable of entering informed pleas," "aware of the nature of the charges and the consequences of [his] guilty pleas," and entering the pleas knowingly and voluntarily.

Almost ten months after the change-of-plea hearing, Conway moved to withdraw his guilty pleas. First, he asserted that he "was unclear as to what the minimum sentence would be on Count Two . . . and Count Six" because "he was lead to believe that he would be facing ten to twelve years rather tha[n] the current thirty-two years of imprisonment." But Conway "admit[ted] his guilt to those offenses." Second, he argued "that the [g]overnment had made a promise that [it] would interview him for the purposes of cooperation in being truthful about his role in the incidents" but "ha[d] never interviewed [him]." Finally, he "assert[ed] that Count Six, using, carrying, and possessing a firearm in furtherance of a drug trafficking crime, occurred at the completion of the robbery when the participations [sic] were fleeing." He maintained "that he cannot be guilty of th[is] . . . [§] 924(c) offense as he was caught prior to the commission of 'furthering a drug trafficking offense.'"[4]

The district court held a hearing on Conway's motion to withdraw his guilty pleas. At the hearing, Conway's attorney argued that the court should permit Conway to withdraw his guilty pleas because Conway believed that he was only facing ten to 12 years' imprisonment. According to Conway, his previous counsel "came to see [him] about three times before [he] signed [his] [p]lea [a]greement." He testified that he signed the plea agreement because counsel repeatedly told him "that with a [§] 5(k)(1), you [are] going to get 10 to 12 years." Conway explained that he wanted to go to trial so that the truth would come out about his involvement in the robberies.

_____

[4]Count 6 actually charged Conway with using, carrying, and possessing a firearm in furtherance of a crime of violence, that is robbery involving a controlled substance. Count 8, to which Conway *did not* plead guilty and which was subsequently dismissed, concerned using, carrying, and possessing a firearm in furtherance of a drug trafficking crime.

The district court then queried Conway about the change-of-plea hearing at which the court reviewed with Conway the possible sentencing ranges in great detail. In response, Conway asserted that he did not know what a "mandatory minimum" was and that he was focused on getting ten to 12 years' imprisonment based on the filing of a § 5K1.1 motion. But upon further questioning, Conway acknowledged knowing that there was a 25-year mandatory minimum on Count 6 and that Count 6 would run consecutively with any other term of imprisonment imposed.

On cross-examination by the government, Conway explained that he pleaded guilty based on his prior counsel's advice that "with a [§] 5(k)(1), [he] would get 10 to 12." The government then questioned Conway about his motion to withdraw his guilty pleas in which Conway "assert[ed] that [he] [was] promised [a §] 5(k)." The government asked Conway where this promise was located in the plea agreement, and Conway responded, "I never said nothing about no promise." Thereafter, Conway claimed that the government "did not honor the [§] 5(k)(1)." The government then reviewed ¶ 17 of the plea agreement with Conway. When asked what the last sentence of ¶ 17 said, Conway replied, "Does not promise any specific sentence." Conway agreed that this did not "promise [him] anything."

The district court denied Conway's motion to withdraw his guilty pleas, finding "no fair and just reason" to justify the withdrawal. The court explained that "at the change of plea hearing . . . the [c]ourt went into substantial detail to explain the . . . mandatory minimums and the sentences that could be possible, and Mr. Conway said he understood that." The court also noted that Conway never objected to the presentence report (PSR), which was dated almost five months prior to Conway's motion to withdraw his guilty pleas.

At sentencing, the district court sentenced Conway to 48 months' imprisonment on Counts 1 and 5, 84 months' imprisonment on Count 2 to run consecutive to Counts

1 and 5, and 300 months' imprisonment on Count 6 to run consecutive to the other counts.

## B. *Johnson*

Johnson also pleaded guilty, pursuant to a plea agreement, to Counts 6 and 8 of the indictment. Paragraph 2 of the plea agreement set forth the factual basis supporting the guilty pleas. It stated, in relevant part:

> h. The narcotics taken from the pharmacy were subsequently collected and identified by the pharmacist at Hometown Pharmacy as Hydrocodone, Morphine, Oxycontin as well as several other narcotic drugs. The replacement cost of the drugs taken from the pharmacy was well in excess of five hundred dollars. Hometown Pharmacy is registered with the Drug Enforcement Administration. Based on the quantity of controlled substances that were taken in the robbery and other evidence, *the government could prove that the defendant and other individuals involved with the defendant in the robbery intended to distribute these controlled substances and that a firearm was used and carried during and in relation to this Drug Trafficking offense.*

(Emphasis added.)

During the change-of-plea hearing, Johnson stated under oath that he wanted to plead guilty to Counts 6 and 8, pursuant to a plea agreement, following his discussions with his attorney and the government. He acknowledged that he signed the plea agreement and that it "contain[ed] [his] full understanding of what [he] negotiated with the government." He also confirmed that no one "made any promises or assurances to [him] of any kind to get [him] to execute the agreement, other than what's actually contained in the agreement itself" and that he was "pleading guilty of [his] own free will because [he is] guilty."

The district court discussed ¶ 2 of the plea agreement with Johnson, inquiring whether Johnson "believe[d] the government needs to prove anything other than what's reflected within paragraph 2 in order to meet the government's burden of proof beyond a reasonable doubt representing the allegations set forth within Counts 6 and 8 of the indictment." Johnson responded, "No, Your Honor." Johnson confirmed that he had discussed ¶ 2 of the plea agreement with counsel and that he "believe[d] the government could and would prove what's reflected in that paragraph."

Johnson pleaded guilty to Counts 6 and 8, and the district court accepted his guilty pleas, finding that he was "fully competent and capable of entering an informed plea" and "aware of the nature of the charges and the consequences of [his] guilty plea." The court also found that Johnson's "pleas of guilty are knowing and voluntary pleas which are supported by an independent basis in fact containing the essential elements of the offense."

Approximately nine months after the change-of-plea hearing, Johnson moved to withdraw his guilty pleas. In his motion, Johnson argued that he desired to plead guilty to Counts 5 and 6, and he admitted his guilt to those offenses. But he argued that he was not permitted to plead to those two offenses but instead had to plead to all counts or face a jury on all counts. According to Johnson, on the eve of trial, the government proposed a plea to the two § 924(c) counts—Counts 6 and 8. Johnson was informed that a codefendant would testify against him. Johnson asserted that "because he could not plead to what he knew in his heart he was guilty of, he chose to accept the government's offer." Johnson admitted to knowing that because he pleaded guilty to Count 8, he automatically faced a minimum sentence of 25 years on that count alone; however, he argued that "the whirlwind of events in the previous days and hours clouded his mind and . . . his plea to the second 924(c) count was not voluntary." According to Johnson, Count 7, possession of hydrocodone with intent to distribute, and Count 8, using, carrying, and possessing a firearm in furtherance of a drug trafficking crime, occurred at the completion of the robbery when the

participants were fleeing the scene. Johnson maintained that "he cannot be guilty of the second 924 (c) offense as he was caught prior to the commission of 'furthering a drug trafficking offense.'" Johnson asserted his innocence to the second § 924(c) charge and argued that the government would not be substantially prejudiced by the withdrawal. Finally, he claimed that the second § 924(c) charge was not supported by any of the government's evidence, i.e., no allegation of a second crime of violence being committed or a second crime of violence involving the use of a firearm.

The district court held a hearing on Johnson's motion to withdraw his guilty pleas. Johnson's attorney argued that Johnson "wish[ed] to withdraw his plea based on the whirlwind of events in the previous days and hours, and to be more specific, there were issues regarding what Mr. Johnson could and could not plead to." According to counsel, Johnson had filed a notice of his intent to plead to Counts 5 and 6, but he was not permitted to do so. Instead, Johnson's options were to plead guilty, pursuant to the government's offer, to the two § 924(c) counts—Counts 6 and 8—or proceed to trial. The court interjected, clarifying that it "had no interest in that matter" and "was not involved in that." Johnson's attorney responded that, based on her understanding, "the Court would not proceed that way." In response, the court explained that it "can't negotiate with a defendant in any manner." Thereafter, Johnson's attorney explained that after learning that a codefendant would testify against him, Johnson "at the last minute, decided to plead to the government's offer of the two [§] 924(c) counts and that came on the eve of trial." She also discussed Johnson's concern after pleading guilty regarding "whether he could have been actually found guilty of the drugs in connection with the firearm possession with intent to distribute," considering that "he was caught shortly after the robbery was committed."

The district court concluded that "no fair and just reason" existed supporting Johnson's withdrawal of the guilty pleas. The court noted that the plea agreement listed the possible sentencing ranges and that it had conducted "a detailed hearing

where the [c]ourt went through the change of plea that listed sentencing ranges." The court pointed out that Johnson moved to withdraw his guilty pleas after preparation of the PSR and addendum.

At sentencing, the district court sentenced Johnson to 384 months' imprisonment, consisting of 84 months on Count 6 and 300 months on Count 8 to be served consecutively to each other.

## II. *Discussion*

On appeal, Conway and Johnson assert that the district court abused its discretion in denying their motions to withdraw their guilty pleas.

> "After a guilty plea is accepted but before sentencing, a defendant may withdraw the plea if he establishes 'a fair and just reason for requesting the withdrawal.'" *United States v. Goodson*, 569 F.3d 379, 382 (8th Cir. 2009) (quoting Fed. R. Crim. P. 11(d)(2)(B)). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." *United States v. Ramirez–Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006). "Even if such a fair and just reason exists, before granting the motion a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *Id*. (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993)). However, "[i]f the defendant fails to establish a fair and just reason for withdrawing the guilty plea, the trial court need not address the remaining considerations." *Nichols*, 986 F.2d at 1201. We review the district court's decision not to allow the withdrawal of a guilty plea for an abuse of discretion. *United States v. Maxwell*, 498 F.3d 799, 801 (8th Cir. 2007); *United States v. Wicker*, 80 F.3d 263, 266 (8th Cir. 1996).

*United States v. Heid*, 651 F.3d 850, 853–54 (8th Cir. 2011).

## A. *Conway*

Conway argues that the government acted in bad faith and breached ¶ 17 of the plea agreement. Specifically, Conway asserts that the government failed to assess Conway's cooperation and consider moving for a downward departure under U.S.S.G. § 5K1.1 based on that cooperation. According to Conway, because the government acted in bad faith, the district court abused its discretion in denying his motion to withdraw his guilty pleas.[5]

"When the government fails to fulfill the terms of a plea agreement, an unsatisfied defendant may seek specific performance or may seek to withdraw his plea." *United States v. Kelly*, 18 F.3d 612, 615–16 (8th Cir. 1994). "While '[a]n express promise to file a motion for downward departure under 18 U.S.C. section 3553(e) or section 5K1.1 . . . would be binding on the government,' . . . *Kelly*, 18 F.3d. [at] 616 . . . , where no such express promise exists, the government's discretion to file a motion under § 3553(e) is preserved." *United States v. Pamperin*, 456 F.3d 822, 824 (8th Cir. 2006) (first alteration in original) (citing *United States v. Licona-Lopez*, 163 F.3d 1040, 1043 (8th Cir. 1998)). "Where the government has so reserved its discretion, the prosecutor's refusal to make a downward departure motion cannot be challenged unless the defendant can make a 'substantial threshold showing' that

---

[5]The government argues that we should apply plain-error review to Conway's argument on appeal because it varies from the argument presented in his motion to withdraw his guilty pleas. According to the government, Conway's argument in his motion "that the [g]overnment had made a promise that they would interview him for purposes of cooperation in being truthful about his role in the incidents" but "ha[d] never interviewed [him]" is entirely different from his argument on appeal, i.e., that the government unconstitutionally breached the plea agreement in bad faith by not moving for a downward departure under § 5K1.1. Because we determine that no error—plain or otherwise—occurred, we need not definitively resolve which standard of review applies.

the refusal was in bad faith[6], irrational, or based on an unconstitutional motive." *United States v. Wilkerson*, 179 F.3d 1083, 1086 (8th Cir. 1999).

In the present case, the government "expressly retained" its discretion to file a § 5K1.1 motion. *See Pamperin*, 456 F.3d at 824. Paragraph 17 of the plea agreement advised Conway that "the government reserve[d] the complete right to make the decision on the nature and extent of the defendant's cooperation," and Conway "agree[d] that the government does not promise, by the terms of this agreement, to file a Section 5K1.1, 18 U.S.C. § 3553(e) or Rule 35 motion." *See United States v. Romsey*, 975 F.2d 556, 557–58 (8th Cir. 1992) (noting that a "carefully-worded plea agreement" providing that "[t]he United States may, but shall not be required to, make a motion requesting the court to depart from the sentencing range called for by the guidelines" preserved the government's discretion).

Even if bad faith is a basis for challenging the government's refusal to make a downward departure, *see Perez*, 526 F.3d at 1138, Conway has not made a substantial threshold showing that the government acted in bad faith. "'[G]eneralized allegations of improper motive'" for the government not filing a substantial-assistance motion do "'not entitle a defendant to a remedy.'" *Holbdy*, 489 F.3d at 913 (quoting *Wade v. United States*, 504 U.S. 181, 186 (1992)). Conway has presented "no evidence which goes beyond his general allegations of improper motive [and bad faith] to establish the threshold showing." *See id*. (quotation and citation omitted). Instead, he only generally alleges that "[t]he government simply never talked to Conway" and concludes that "[t]he government has impermissibly evaded its obligation by not assessing Conway's cooperation." We additionally note that at the hearing on Conway's motion to withdraw his guilty pleas, Conway claimed that the government

---

[6]"There is an intra-circuit split whether bad faith is an additional basis for compelling a motion for downward departure based on substantial assistance." *United States v. Perez*, 526 F.3d 1135, 1138 (8th Cir. 2008) (citing *United States v. Holbdy*, 489 F.3d 910, 913 n.2 (8th Cir. 2007)).

"did not honor the [§] 5(k)(1)" paragraph of the plea agreement; nonetheless, Conway never requested that the district court question the government as to why it did not file a substantial-assistance motion. *See Pamperin*, 456 F.3d at 825. Thus, the government was not put on notice of the need to explain why it did not make a § 5K1.1 motion. *See id*. Therefore, we hold that the district court did not err in denying Conway's motion to withdraw his guilty pleas based on the government's purported breach of the plea agreement.

## B. *Johnson*

Johnson argues that the district court abused its discretion in denying his motion to withdraw his guilty pleas because he presented fair and just reasons for the withdrawal. First, he contends that he is legally innocent of Count 8—using, carrying, and possessing a firearm in furtherance of a drug trafficking crime. Second, he asserts that his plea was involuntary.

### 1. *Legal Innocence*

Johnson admits his guilt as to Count 6—using, carrying, and possessing a firearm in furtherance of a crime of violence, that is robbery involving a controlled substance. But he asserts that he is actually innocent of Count 8, which alleged that he possessed a firearm in furtherance of a drug trafficking crime. Johnson claims innocence because authorities apprehended him before he could sell any drugs.

A "mere assertion of innocence, absent a substantial supporting record, will not be sufficient to overturn a denial of a motion to withdraw." *United States v. Ludwig*, 972 F.2d 948, 951 (8th Cir. 1992) (quotation, alteration, and citation omitted). Furthermore, a defendant's "claims of innocence are unavailing [where the defendant] admi[ts] to the contrary in the plea agreement and stipulation, and at the change-of-plea hearing." *United States v. Peebles*, 80 F.3d 278, 279 (8th Cir. 1996) (per curiam). As a result, "[a]n assertion of innocence—even a swift change of heart after the

-13-

plea—does not constitute a fair and just reason to grant withdrawal." *United States v. Alvarado*, 615 F.3d 916, 922 (8th Cir. 2010) (quotations and citation omitted).

Although Johnson asserts that he is innocent of Count 8 because he was apprehended before any drugs were trafficked, the record does not support Johnson's conclusory assertion of innocence. Johnson agreed in his plea agreement—and confirmed at the plea hearing—that

> [b]ased on the quantity of controlled substances that were taken in the robbery and other evidence, the government could prove that the defendant and other individuals involved with the defendant in the robbery intended to distribute these controlled substances and that a firearm was used and carried during and in relation to this Drug Trafficking offense.

Johnson also agreed that "[t]he replacement cost of the drugs taken from the pharmacy was well in excess of five hundred dollars." "[P]ossession with intent to distribute" is a "drug trafficking crime." *United States v. Bell*, 477 F.3d 607, 616 (8th Cir. 2007). We agree with the government that "the fact that Johnson was caught before any of the prescription medications were distributed is irrelevant" because he admitted in his plea agreement "that he possessed a large quantity of drugs [with the intent to distribute them] and used a firearm in furtherance of that crime."

### 2. *Voluntariness of Plea*

According to Johnson, although he filed a notice of intent to plead guilty to Count 5—robbery involving a controlled substance—and Count 6—using, carrying, and possessing a firearm in furtherance of a crime of violence, that is robbery involving a controlled substance—he "was advised by court personnel that the [district] court would not . . . allow[ ] him to plead to these two counts." As a result, he was placed in the "precarious position" of "[e]ither . . . proceed[ing] to trial on all counts, or plead[ing] to whatever the government desired." He concludes that "the

-14-

fact that [he] was not allowed to plead, as intended, [to Counts 5 and 6] draws into serious question the voluntariness of his plea." He maintains that he "reluctantly decided to accept the [g]overment[']s last minute offer [for him] to plead [guilty] to [the] two [§] 924(c) charges" in Counts 6 and 8 after learning that a codefendant was going to testify against him at trial.

"We review *de novo* whether the plea was knowing and voluntary; we review the court's decision to deny the motion to withdraw for abuse of discretion." *United States v. Goodson*, 569 F.3d 379, 382 (8th Cir. 2009). "Where the district court fully informs a defendant of the rights he is waiving, and the defendant's statements at the plea hearing show that he knowingly and voluntarily pleaded guilty, the occasion for setting aside a guilty plea should seldom arise." *United States v. Jones*, 111 F.3d 597, 602 (8th Cir. 1997) (quotations and citations omitted). We have previously rejected a defendant's claim that his plea was not voluntary where "[t]he district court inquired fully into [the defendant's] state of mind at the time of the change[-]of[-]plea hearing, whether he had adequately reviewed and considered the plea agreement, and whether he understood the plea agreement and the consequences of pleading guilty." *United States v. Austin*, 413 F.3d 856, 858 (8th Cir. 2005) (per curiam). A defendant's "solemn declarations in open court" that he is "competent and capable" and "was knowingly and intelligently waiving his rights" "carry a strong presumption of verity. [A defendant's] self-serving, post-plea claims that he was unable to voluntarily choose to plead guilty fly directly in the face of his own plea hearing testimony before the district court." *United States v. Andolini*, 705 F.3d 335, 339 (8th Cir. 2013) (block quotation and citation omitted).

Here, at the change-of-plea hearing, Johnson testified under oath that he understood the plea agreement, was not forced to plead guilty, and was pleading guilty of his own free will. The district court found Johnson's pleas were voluntarily given. Johnson's claim that the district court would accept all-or-nothing as part of a plea deal is not supported by the record. The district court explained to Johnson at the

-15-

hearing that it does not get involved in plea negotiations. Therefore, we hold that Johnson voluntarily and knowingly entered his guilty pleas and that his "complaints do not present a fair and just reason for withdrawing his plea[s]." *See id*. The district court did not abuse its discretion in denying Johnson's motion to withdraw his guilty pleas.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____