# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-3415

———————————————

United States of America

*Plaintiff - Appellee*

v.

Jeremy Dionne Norvell

*Defendant - Appellant*

——————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————

Submitted: June 14, 2013
Filed: September 3, 2013 **(Corrected 9/4/2013)**

——————

Before LOKEN, BRIGHT, and BYE, Circuit Judges.

——————

BYE, Circuit Judge.

Jeremy Norvell pleaded guilty to conspiracy to distribute oxycodone, oxymorphone, cocaine, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. He moved to withdraw his guilty plea, contending it was not knowing, intelligent, and voluntary because, most significantly, of his misunderstanding that he was guaranteed the ability to attend Minnesota Teen Challenge, a long-term, faith-based chemical dependency program, before the district

court sentenced him. He also alleged his counsel provided ineffective assistance during plea negotiations. The district court[1] denied his motion and Norvell appeals. We affirm.

I

Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents learned from cooperating individuals that Norvell dealt drugs in Duluth, Minnesota. Authorities conducted several "controlled buys" of Opana, a brand name of oxymorphone, a powerful opioid analgesic. They obtained a search warrant and executed it at Norvell's house, during which time he unsuccessfully tried to escape in his car and struck a police vehicle. Agents recovered 343 forty-milligram Opana pills, as well as cash and marijuana.

Lengthy plea negotiations followed. The government offered its first plea deal to Norvell in October 2011. The deal required Norvell to agree to a reckless endangerment enhancement for striking the police vehicle, as well as the government's position Norvell could be a career offender based upon his two prior convictions for vehicular flight from a police officer. See Presentence Investigation Report (PSR) 11-12. Norvell declined the deal.

The government extended a second plea offer on November 16, 2011. After Norvell had declined the first plea deal, Kevin Cornwell, Norvell's attorney, discovered one of the vehicular flight convictions was classified as a gross misdemeanor, and therefore Norvell did not qualify as a career offender. A disagreement persisted over Norvell's criminal history category. The government believed it was VI; Norvell thought it was lower. Norvell's attorney warned him of

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

the likelihood the government would pursue drug conspiracy charges, and thus attribute greater drug quantities and harsher penalties to Norvell, if he refused the plea deal. Norvell did just that.

The government responded by filing a Second Superseding Indictment, which added a charge of conspiracy to distribute oxycodone, oxymorphone, cocaine, and marijuana, charges for six specific acts of oxymorphone distribution, and a charge of possession with intent to distribute cocaine. The government also provided notice it intended to rely on Norvell's 1997 conviction for cocaine possession to enhance the applicable statutory maximum penalties for each count from twenty to thirty years. 21 U.S.C. §§ 841, 851.

Plea discussions continued. Norvell attended a reverse proffer session, at which time the government made a third offer, which required Norvell to plead guilty to the conspiracy charge. Norvell and Cornwell met privately following the government's presentation. At that time, Cornwell received an email stating Norvell had been accepted into Minnesota Teen Challenge, a highly-structured, faith-based program for people with chemical dependancy challenges. Criminal defendants sometimes attend Teen Challenge between their guilty plea and sentencing, and upon successful completion of the program, may receive lighter sentences. Norvell expressed a strong desire to attend Teen Challenge. Norvell and Cornwell concluded their meeting. Two U.S. Marshals Special Agents ("SA"), Nicholas Garlie and Kylie Williamson, escorted Norvell back to a holding area. Norvell voiced his desire to attend Teen Challenge to the SAs. According to Norvell, Garlie and Williamson told him he would have to plead guilty to attend Teen Challenge. The SAs disputed that assertion in sworn testimony.

Norvell pleaded guilty to the conspiracy count. The court, government counsel, and Cornwell engaged in a lengthy colloquy to ensure Norvell's plea was knowing, intelligent, and voluntary, and that it was supported by a sufficient factual basis.

Norvell affirmed he had read and understood the entire agreement. He acknowledged the court would ultimately determine his criminal history category. He stated his attorney had "done a wonderful job" and government counsel "did a good job of explaining everything for [him]." Plea Hr'g Tr. 4. He also outlined the factual basis for his plea. He admitted he possessed over 800 forty-milligram Opana pills during 2011 and participated in each of the "controlled buys."

The court then conducted its own inquiry, during which time it had the following exchange with Norvell:

> The Court: On the other side of that, has anyone made promises to you about what's going to happen other than the promises in the plea agreement?
>
> Norvell: Just I was going to get an opportunity to go to Teen Challenge before my sentencing[.]

Id. 32. After inquiring further regarding the content of Teen Challenge and the government's position regarding Norvell's participation in the program, the court reminded Norvell that it had the final word with regard to Teen Challenge and Norvell's sentence:

> The Court: I want to just make sure you understand and we all understand what's happening, but [Teen Challenge is] not part of your sentence itself. And it may be included as part of what you do as a program, but you still got to get sentenced by the Court as to what happens here. Correct?
>
> Norvell: Yes, sir.
>
> The Court: Okay. And that's what you understand?
>
> Norvell: Yes, sir.

<u>Id.</u> 33-34.  At the conclusion of the hearing, Norvell entered a formal guilty plea.

Approximately one month later, Norvell filed a motion to modify his order of detention to participate in Teen Challenge.  The district court denied the motion, reasoning that 18 U.S.C. § 3145(c), the governing statute, permitted the court to modify Norvell's detention order only if Norvell demonstrated "exceptional reasons why [his] detention would not be appropriate."  Although laudable, the desire to seek treatment and rehabilitate oneself is not "'clearly out of the ordinary, uncommon, or rare.'"  Order Re:  Mot. to Modify Detention Order 2 (quoting <u>United States v. Larue</u>, 478 F.3d 924, 926 (8th Cir. 2007) (per curiam)).

Through new counsel,[2] Norvell moved to withdraw his guilty plea.  The court denied the motion.  Norvell renewed his request and the parties agreed to an evidentiary hearing, at which Norvell testified on his own behalf.  He claimed he understood the court's statement Teen Challenge was not "part of" his sentence to mean he was guaranteed a place in Teen Challenge, but his ultimate sentence would depend on his performance in the program.  He reiterated his belief Special Agent Garlie told him he would have to plead guilty to attend Teen Challenge.  He also stated had Cornwell correctly advised him of his criminal history category, he would have taken the government's first plea deal, which did not include the conspiracy charge.

Cornwell testified as well.  He conceded he had incorrectly calculated Norvell's criminal history category by not discovering Norvell's career offender status prior to the time Norvell declined the first plea deal, about which Cornwell felt "terrible."  Mot. Hr'g Tr. 158.  But he also affirmed that "any time [they] talked about the plea agreement," he reminded Norvell it was ultimately up to the court to calculate criminal history.  <u>Id.</u> 123.  He said the same thing with respect to Teen Challenge.  <u>Id.</u> 141.

---

[2]The court had granted Cornwell's motion to withdraw ten days earlier.

Garlie and Williamson also refuted Norvell's testimony accusing them of stating a guilty plea was a precondition to attend Teen Challenge.

The district court denied Norvell's motion to withdraw his guilty plea. The court calculated Norvell's offense level at 32 and his criminal history category at III. This produced a guidelines range of 151 to 188 months. The court sentenced Norvell to 188 months, the top of the range. Norvell then filed this timely appeal.

II

Norvell makes two arguments. First, he claims the district court abused its discretion by denying his motion to withdraw his guilty plea. Second, he claims Cornwell provided ineffective assistance during plea negotiations.

A.    Guilty Plea

Norvell argues the district court erred by denying his motion to withdraw for three reasons: (1) his misunderstanding regarding Teen Challenge; (2) the insufficient factual basis supporting his plea; and (3) other facts and circumstances.

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Cruz, 643 F.3d 639, 641 (8th Cir. 2011). A defendant may withdraw a guilty plea that has been accepted by the court if he demonstrates "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant bears the burden of showing such a reason. Cruz, 643 F.3d at 642. Moreover,

> [e]ven if such a fair and just reason exists, before granting the motion a court must consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to

withdraw it, and whether the government will be prejudiced if the court grants the motion."

United States v. Ramirez-Hernandez, 449 F.3d 824, 826 (8th Cir. 2006) (quoting United States v. Nichols, 982 F.2d 1199, 1201 (8th Cir. 1993)). If the defendant does not demonstrate fair and just grounds, the court need not consider these additional factors. United States v. Wicker, 80 F.3d 263, 266 (8th Cir. 1996) (quotation and citation omitted).

      1.     Teen Challenge

Norvell reasserts the same explanation for his misunderstanding that he offered at the evidentiary hearing. In short, he believed his place at Teen Challenge was set in stone, but he had to perform well to receive a shorter sentence. Had he understood his attendance was not guaranteed, he would not have pleaded guilty. Moreover, he claims his "certain" success in Teen Challenge would, at a minimum, "have supported a request for a substantial downward variance." Appellant's Br. 27; see United States v. Shy, 538 F.3d 933, 938 (8th Cir. 2008) (affirming a substantial downward variance following genuine rehabilitation). Putting these pieces together, Norvell's plea was not knowing, intelligent, and voluntary, and the district court's error could have been prejudicial.

We think otherwise. First, it is undisputed the court told Norvell Teen Challenge was not a guaranteed part of Norvell's sentence, but rather that Teen Challenge "*may* be included as part of what you do . . . ." Plea Hr'g Tr. 20, 33 (emphasis added). Counsel for the Government explained that Teen Challenge was "not part of the government's offer or the agreement itself." Plea Hr'g Tr. 33. Norvell's own attorney informed him that Teen Challenge was not a part of the plea agreement, and, as such, his attendance in the program was not guaranteed. Mot. Hr'g Tr. 136, 140-41; Cornwell Aff. ¶ 23, Appellant's App. 188a ("Most pointedly, I made

it clear to [Norvell] during our discussions that I felt his placement in Teen Challenge was an uphill battle . . . ."). Second, the plea agreement contains an "integration clause" indicating it is the "entire agreement" between the parties and "[t]here [were] no other agreements, promises, representations, or understandings." Plea Agr. 8, Appellant's App. 113a. Norvell confirmed this fact. Plea Hr'g Tr. 20. An integration clause "normally prevents a criminal defendant[] who has entered into a plea agreement[] from asserting that the government made oral promises to him not contained in the plea agreement itself." United States v. Leach, 562 F.3d 930, 936 (8th Cir. 2009) (internal quotation and citation omitted). Norvell provides no explanation why that prohibition should not operate here. Third, nothing other than Norvell's own recollection—contradicted by the SAs, two sworn law enforcement officers—supports Norvell's assertion he was told he must plead guilty to attend Teen Challenge. The district court found Norvell's testimony lacked credibility, and it is in a better position to assess credibility than we are. United States v. Newson, 46 F.3d 730, 733 (8th Cir. 1995). While the plea record may show a gap in the explanation of the sentencing process as it relates to Teen Challenge–the district court never directly said that Teen Challenge was not a part of the plea agreement, just not a part of the sentence–the order denying Norvell's motion to withdraw should be affirmed. As discussed, the district court did not find Norvell credible and determined that Norvell was not guaranteed an opportunity to attend Teen Challenge as a part of, or in return for accepting, the plea agreement. As such, Norvell's alleged misunderstanding does not permit withdrawal.

2.     Factual Basis

Norvell contends the factual basis established at the plea hearing does not support his guilty plea. Although Norvell admitted distributing drugs, he claims the facts do not establish he conspired to distribute drugs.

Federal Rule of Criminal Procedure 11(b)(3) provides, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." "A guilty plea is supported by an adequate factual basis when the record contains 'sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense.'" United States v. Cheney, 571 F.3d 764, 769 (8th Cir. 2009) (quoting United States v. Gamble, 327 F.3d 662, 664 (8th Cir. 2003)). "[F]acts gathered from the prosecutor's summarization of the plea agreement and the language of the plea agreement itself, a colloquy between the defendant and the district court, and the stipulated facts before the district court, are sufficient to find a factual basis for a guilty plea." United States v. Brown, 331 F.3d 591, 595 (8th Cir. 2003) (citations omitted). The court "may also consider facts set forth in the presentence report to determine whether there was a sufficient factual basis for the plea." United States v. Christenson, 653 F.3d 697, 700 (8th Cir. 2011).

The record and PSR amply support a determination Norvell likely committed the offense. At the plea hearing, Norvell articulated a factual predicate for the conspiracy charge and confirmed that he obtained Opana from his "co-conspirator sources of supply." Plea Hr'g Tr. 27. Further, an "unindicted individual" facilitated three "controlled buys" from Norvell at his residence by setting up the deals and accompanying the cooperating individual to Norvell's apartment. PSR 3. Michael Taylor, Norvell's roommate, also admitted he obtained marijuana from Norvell and helped him sell Opana pills on a few occasions. Id. 4. These facts provide a sufficient basis for the district court to determine Norvell (1) agreed, with at least one other person, to distribute controlled substances; (2) voluntarily and intentionally joined the agreement; and (3) knew the essential purpose of the agreement at the time he joined. See United States v. Meeks, 639 F.3d 522, 527 (8th Cir. 2011) (listing elements of conspiracy); United States v. Brown, 414 F.3d 976, 977 (8th Cir. 2005) ("Evidence of an express agreement is not required for a conspiracy conviction."). We find no infirmity in the district court's conclusion.

3.    Other Factors

Norvell sets forth three additional reasons why the district court should have let him withdraw:  (1) he was given very little time to review the plea agreement before pleading guilty; (2) Cornwell misadvised him about his criminal history category; and (3) he promptly moved to withdraw, and granting the motion would not prejudice the government.

We find these arguments meritless.  Norvell expressly stated he felt he had enough time to read and consider the plea agreement.  Plea Hr'g Tr. 4.  Government counsel also went through the agreement with Norvell paragraph by paragraph at the plea hearing.  Id. 10-20.  As for the criminal history calculation, we recently reiterated that defense counsel's incorrect calculation of a defendant's criminal history category does not provide a basis for withdrawing a guilty plea:

> A defendant may not withdraw a guilty plea . . . merely because he misunderstands how the sentencing guidelines will apply to his case.  So long as the district court tells a defendant the statutory range of punishment that he faces and informs him that the sentencing guidelines will be used in determining the ultimate sentence, the plea is binding.  This is true even where the misunderstanding is caused by defense counsel's erroneous estimation of what the ultimate sentence will be.

United States v. Thomas, 705 F.3d 832, 834 (8th Cir. 2013) (per curiam) (quoting Ramirez-Hernandez, 449 F.3d at 826).  Finally, the court only considers prejudice to the government after the defendant has provided a fair and just reason for withdrawal.  Wicker, 80 F.3d at 206 (quotation and citation omitted).  Norvell has not done that.  We therefore need not, and do not, consider prejudice.

B.      Ineffective Assistance[3]

Norvell claims Cornwell provided him ineffective assistance during plea negotiations. He claims Cornwell's incorrect criminal history calculation discouraged him from accepting the November plea agreement, which would have produced an advisory guidelines range of 70-108 months, depending on the resolution of the reckless endangerment enhancement. He also contends the Supreme Court's recent decision in Lafler v. Cooper, 132 S. Ct. 1376 (2012), provides an additional reason why he should be allowed to withdraw his plea.

Defendants have a Sixth Amendment right to counsel, and that right exists during the plea bargaining process. Padilla v. Kentucky, 130 S. Ct. 1473, 1486 (2010). We review claims of ineffective assistance of counsel de novo and review the district court's underlying factual findings for clear error. United States v. Tinajero-Ortiz, 635 F.3d 1100, 1103 (8th Cir. 2011). "Defense counsel's performance can serve as the requisite 'fair and just reason' for withdrawal only if [the defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." United States v. McMullen, 86 F.3d 135, 137 (8th Cir. 1996); Hill v. Lockhart, 474 U.S. 52, 58 (1985) ("[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." (citing Strickland v. Washington, 466 U.S. 668 (1984))). To establish deficient performance, the defendant must show his counsel's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. To show prejudice, the defendant

---

[3]"Ineffective assistance of counsel claims . . . are generally not reviewed on direct appeal unless the district court has developed a record on the issue." United States v. Russell, 132 F. App'x 670, 671 (8th Cir. 2005) (per curiam) (unpublished). Here, the district court did indeed develop a record. Therefore, the ineffective assistance matter is appropriately before us. The parties do not dispute this matter. Appellee's Br. 54 n.13 ("The United States agrees with Norvell's position that direct review of his ineffective assistance claim is proper given the record generated in the district court.").

must establish that "he would have accepted the plea but for counsel's advice, and that had he done so he would have received a lesser sentence." Wanatee v. Ault, 259 F.3d 700, 704 (8th Cir. 2001); see Lafler, 132 S. Ct. at 1385.

Norvell's arguments are unpersuasive. Thomas, discussed above, applies here as well; defense counsel's inaccurate criminal history calculation does not provide a basis to withdraw a guilty plea. Thomas, 705 F.3d at 834 (quotation and citation omitted). Nor does Lafler help. In Lafler, the Supreme Court concluded an attorney who incorrectly informed the defendant of a legal rule and improperly advised his client to reject a plea offer based on that rule provided ineffective assistance. 132 S. Ct. at 1383-88. Yet here, Cornwell advised Norvell not to reject the November 2011 plea offer, but to accept it. Cornwell Aff. ¶ 11, Appellant's App. 183a ("It was my advice to the Defendant that he should accept the government's offer for a guilty plea to a possession charge."). He did so because if Norvell refused the plea deal, the government would—and eventually did—charge him with conspiracy and hold him accountable for greater drug quantities. Cornwell's performance does not violate Lafler.

Finally, we observe Norvell did not object to Cornwell's allegedly deficient performance at his Rule 11 hearing. A defendant's "failure to assert any objections to his counsel's performance at the change-of-plea hearing, despite his knowledge of the availability of a defense, refutes any claim of ineffective assistance of counsel as a basis for withdrawing his plea." United States v. Murphy, 572 F.3d 563, 569 (8th Cir. 2009) (internal quotations and citations omitted). Norvell testified during the plea hearing that Cornwell had "done a wonderful job." Plea Hr'g Tr. 4. Later during the hearing, when asked if Cornwell had done everything Norvell expected of him, Norvell replied, "You've done an excellent job, sir." Id. 31. Norvell's failure to object to—indeed, his praise of—Cornwell's performance precludes his ineffective assistance claim.

## III

Norvell has not demonstrated a "fair and just reason" for requesting the withdraw of his guilty plea. The district court did not abuse its discretion when it denied Norvell's motion. We affirm.

BRIGHT, Circuit Judge, dissenting.

I dissent. It is a basic rule of law in the federal courts that a plea of guilty must be knowing, intelligent, and voluntarily made. All parties, including the prosecutor, defense counsel, and judge, should strive to ensure that defendants understand the terms and consequences of guilty pleas. The issue in this case is not whether promises were made to Norvell. The issue is whether Norvell realized that despite acceptance into the Teen Challenge program, the arrangement might or might not be approved by the court. I conclude that the fact that the court might reject Teen Challenge was never fully explained to Norvell. Thus the plea of guilty was not knowingly and intelligently made and it should be set aside.

The most relevant evidence on this issue is contained in the record of the change of plea hearing and is reproduced below:

> The Court: But has anybody, and when I say "anybody," I mean anybody, including your own counsel or the prosecution or any of the agents or anyone done anything to force you to come here to plead guilty today?
>
> Norvell: Nobody forced me to, no, sir.
>
> The Court: So you are here on your own?
>
> Norvell: I am, sir.

The Court: Okay. On the other side of that, has anyone made promises to you about what's going to happen other than the promises in the plea agreement?

Norvell: Just that I was going to get an opportunity to go to Teen Challenge before my sentencing?

The Court: I don't know. [Government counsel], do you want to address that? I'm not sure what it is.

Government counsel: Your Honor, I know the defendant has enrolled or attempted to enroll in Minnesota Teen Challenge. And from that perspective, it's not part of the government's offer or the agreement itself, although I have made clear to [defense counsel] and to the defendant that I'm not going to object if there becomes—if he presents a motion saying I've made it into Teen Challenge, and he's accepted into the program. It follows the course of conduct in this related investigation when it comes to people who are trying to better themselves before sentencing.

The Court: Okay. And my recollection, I've had a couple of folks who have done that. Oftentimes, it's kind of a diversion program, is it not?

Government counsel: I don't know. …from what I understand, it is, the goal is to try to interdict drug problems and difficulty.

The Court: Yes, and it's like another treatment program. Is that how you see it, Mr. Norvell?

Norvell: Yes, sir.

The Court: But if I remember correctly, and I want to just make sure you understand and we all understand what's happening, but that's not part of your sentence itself. And it may be included as part of what you do as a program, but you still got to get sentenced by the Court as to what happens here. Correct?

Norvell:  Yes, sir.

The Court:  Okay.  And that's what you understand?

Norvell:  Yes, sir.

Plea Hr'g Tr. 32-34.[4]

Norvell may well have understood that he would get an opportunity to attend Teen Challenge before his sentencing.  Despite efforts by the district court and government counsel to clarify how Teen Challenge related to the plea agreement, the colloquy did nothing to disabuse Norvell of the notion that Teen Challenge was part and parcel of his guilty plea.  The prosecutor explained that Teen Challenge was "not a part of the government's offer or the agreement itself," but went on to state that the government would not object to a motion to attend Teen Challenge.  The district court judge also attempted to ensure that Norvell understood the status of Teen Challenge, by telling him it was "not a part of [the] sentence itself."  But the judge went on to state that Teen Challenge "may be included as a part of what you do as a program."

The rule that pleas must be knowing, intelligent, and voluntary means nothing if the contents of plea agreements are not explained in a way defendants can understand.  The judge and the prosecutor may have understood that Norvell might not be allowed to attend Teen Challenge.  A lawyer who reads the record might understand that fact from language like "it's not a part of the government's offer or the agreement itself," and "you still [have] to get sentenced by the court." But neither Norvell nor any similarly situated defendant would have such an understanding.  No

---

[4]The reader will observe that the majority opinion, at pages 7 and 8, dilutes the importance of the above colloquy among the defendant, the prosecutor, and the judge, by referring to testimony given by both sides at the later motion hearing.  But at its conclusion, on page 8, the majority concedes "the plea record may show a gap." Indeed, it's quite a gap.

-15-

one told him, in clear terms, "You may or may not be able to attend Teen Challenge. It is not guaranteed." I emphasize that the prosecutor told Norvell the government would not object to his participation in Teen Challenge and the court told him Teen Challenge may be included as part of a program.

If someone had informed Norvell at the change of plea hearing, in clear terms, that his ability to participate in Teen Challenge was questionable, his sentencing options would have looked much different. He may well have not agreed to plead guilty. Indeed, had it been disclosed that the court could deny Norvell the opportunity to attend Teen Challenge, the record would look much different.

Guilty pleas play a very important role in our criminal justice system. Unfortunately, the process by which district courts approve guilty pleas is often rote. Plea bargains are sometimes fair, and maybe sometimes not so fair. Nonetheless, all the participants—lawyers as well as judges—must bear in mind that the purpose of a hearing on a guilty plea is to ensure the defendant knows what he is agreeing to. The Rule 11 colloquy is not merely a series of questions to be answered in the affirmative. It is designed to ensure knowing, intelligent, and voluntary pleas. Extreme care must be taken to make sure that defendants have no misunderstandings about the effect of a guilty plea. This plea record shows a gap in the explanation of the sentence as it related to Teen Challenge. In my view the plea of guilty should be set aside and the case remanded for further proceedings.

_____